Travelers' Ins. Co. vs. Fricke.

TRAVELERS' INSURANCE COMPANY, Respondent, vs. FRICKE, Appellant.

*October 14 — November 4, 1896.*

*Life and accident insurance: Classification of companies: License fees: Construction of statute: Practical construction by administrative department: Revocation of license: Nonpayment of fees.*

1. Ch. 59, Laws of 1870 (requiring in secs. 1–26 certain acts to be done or conditions to exist before any "life *or* accident " insurance company shall do business in this state, and providing, in sec. 27, that "no life or life *and* accident insurance company " shall do business in this state without having first obtained a license therefor by payment of the fees therein prescribed), was not intended to create a class of "life *and* accident " companies, since if so construed said act would not require such companies to fulfill the conditions imposed by the first twenty-six sections, nor strictly accident companies to pay the license fee prescribed in sec. 27.

2. Even if said ch. 59, Laws of 1870, were construed as creating a class of life *and* accident insurance companies, such classification was repealed by the revision of 1878, said chapter having been expressly repealed thereby and all reference to such class eliminated therefrom.

3. Sec. 1953*a*, S. & B. Ann. Stats. (authorizing foreign accident insurance companies to transact business in this state, not included within the term "life insurance," upon compliance with the prescribed conditions and making them "subject to the same fees and taxes as are now paid by fire insurance companies doing business in this state "), although not so denominated, was in effect an amendment to sec. 1220, R. S. (providing that "every company transacting the business of life or accident insurance in this state shall pay " an annual license fee of $300, and that in addition domestic companies shall pay two per cent. of their receipts for premiums during the preceding year), and required the payment by such companies of the same fee as that exacted from fire companies, in addition to the $300 fee provided for in sec. 1220.

4. In order that the practical construction of a statute by an administrative department for a long series of years may be binding on the court, the law so construed must be doubtful, ambiguous, or uncertain.

5. A license erroneously granted to an accident insurance company upon the payment only of the $300 fee prescribed in sec. 1220, R. S.,

was properly revoked by the insurance commissioner upon refusal to pay the additional fee required by sec. 1953a, S. & B. Ann. Stats.

[6. Whether the commissioner in such a case might revoke the license of such a company for default in payment of the fee required by sec. 1953a, S. & B. Ann. Stats., for a series of years preceding that for which the license was granted, not determined.]

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action in equity, commenced June 3, 1895, against the defendant, as commissioner of insurance of the state, to perpetually enjoin him from revoking a license issued by him to the plaintiff authorizing it to transact business within this state. The facts were not in dispute upon the trial, and were settled by stipulation. They are briefly as follows: The plaintiff is, and has been since prior to the year 1880, a Connecticut corporation, empowered to transact, and in fact transacting, both the business of life insurance and the business of accident insurance. During that time it has transacted both classes of business in this state under annual licenses issued to it by the various insurance commissioners of the state, all of which licenses, including the one issued by the present commissioner, have been issued upon payment of a license fee of $300 for each year. During that time the company has made all the reports required by law, and has in all other respects complied with the provisions of the law on that subject. During the years commencing with the year 1880 and ending with the year 1894, the premiums received by it from its accident business in this state amounted to $804,971.04, and from its life business $120,754.55, as appears by its annual reports filed with the commissioner. On the 25th of February, 1895, the present commissioner issued a license to the plaintiff upon payment of a $300 license fee, authorizing the plaintiff to transact "its appropriate business of life insurance" within this state until March 1. 1896. On the 27th day of May

following, the commissioner, after hearing counsel for the company, decided that the plaintiff was required by law to pay a license fee of two per cent. upon its premiums received for accident insurance within this state during the preceding year, and determined to revoke its said license unless it paid said two per cent., not only upon the business of the previous year, but also for all the years for which it was in arrears, amounting to $16,099.35. Thereupon this action was brought to restrain such threatened revocation, and the court, after finding the facts, decided that the plaintiff could only be required to pay a license fee of $300, and perpetually enjoined the commissioner from revoking the license. From this judgment the defendant has appealed.

The *Attorney General* and *John L. Erdall*, Assistant Attorney General, for the appellant.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

WINSLOW, J. The first contention of the plaintiff is, in brief, that there are three classes of foreign life or accident insurance companies recognized by our statutes, viz.: (1) Life insurance companies; (2) life *and* accident insurance companies; and (3) accident insurance companies; and that the first two classes of companies are required to pay an annual license fee of $300 only, and the third class a license fee of two per cent. upon the premium receipts for the preceding year. Further, it contends that it is a company of the second class, namely, a life *and* accident insurance company, and hence that it can only be compelled to pay a license fee of $300 per annum. The reasoning is sound if the first premise is correct; hence the question is whether that premise is correct. The consideration of this question calls for a review of the legislation on the subject, commencing with

ch. 59, Laws of 1870, which seems to be the first act relating exclusively to life or accident insurance. This law is entitled "An act to regulate the business of life insurance," and was evidently intended to constitute a complete code governing the transaction of life or accident insurance within this state by either domestic or foreign companies. This code is comprised in twenty-seven sections. The first twenty-six sections contain a large number of provisions requiring certain specified acts to be done or conditions to exist before any "life or accident" insurance companies shall do business in this state, such as the possession of a certain capital, the making of certain reports to the secretary of state, the appointment of an attorney, and the filing of a copy of its charter by foreign companies, and other requirements unnecessary to be stated at length. In all these provisions the companies referred to are invariably styled "life *or* accident" insurance companies, and it is absolutely certain that, if these sections were to be considered alone, the act classifies the companies to which it applies into two classes, viz. life insurance companies and accident insurance companies. In sec. 27, however, a difference in the phraseology occurs, and it is really upon this difference that the plaintiff's present contention is based. In this section it is provided substantially that "no life or life *and* accident insurance company" shall do business in this state without having first obtained a license therefor from the secretary of state, which is to be obtained by the payment of an annual $300 license fee in case of a foreign "life or life *and* accidental insurance company," and one per cent. upon the preceding year's premiums on business done in this state in case of a domestic "life or life and accident insurance company." We find ourselves unable to agree with the plaintiff's idea that this section creates a new class of insurance companies not before referred to in the act, to wit, "*life and accident* insurance companies." If it did create such a class, then the

remarkable result would inevitably follow that an exclusively accident insurance company, while it would be required to make all the reports and fulfill all the conditions imposed by the first twenty-six sections of the act, would not have to pay any license fee under the twenty-seventh section; while, on the other hand, a "life and accident insurance company" would be required to pay a license fee under the twenty-seventh section, but would escape from all the requirements contained in the first twenty-six sections of the act.   Such a construction seems intolerable, when the purpose is manifest through the entire act to make a complete and uniform code.   A more reasonable construction would seem to be that the change of language in sec. 27 was an inadvertence, resulting probably from the well-known fact that an accident insurance company is generally, if not always, in a certain degree, a life insurance company, because it insures against *death* from accident as well as against injury from accident.   In this sense it is a life insurance company as well as an accident insurance company, because it insures life against one class of dangers that threaten it, but not against all the dangers covered by an ordinary policy of life insurance.

This view of the statute renders it harmonious and effective from beginning to end, while the other renders it absurd by creating two very singular, not to say ridiculous, gaps in it.   But, whatever might be our conclusion as to the proper construction of this act had it remained upon the statute book, it seems to us entirely clear that the course of subsequent legislation upon the subject has relieved the question from all doubt.   By ch. 214, Laws of 1878, an insurance department was organized, and the office of insurance commissioner was created, and the business of supervising insurance business of all kinds within the state was taken out of the hands of the secretary of state, and placed in charge of the new officer.   By ch. 256, Laws of 1878, sec. 27 of ch. 59,

aforesaid, was amended by changing the one per cent. of premium receipts required to be paid by domestic companies to two per cent.   By the revision of the statutes in the same year the insurance laws of the state, including the act of 1870, were incorporated in various chapters of the Revised Statutes of 1878, with such changes as were necessary to include intervening amendments and secure harmony.   The greater part of the first twenty-six sections of ch. 59, Laws of 1870, was incorporated in secs. 1947 to 1955, inclusive, of the statutes, with some changes and additions, none of which, however, affect in any way the question now before us.   In these sections the classification of such companies into the two classes created by ch. 59, aforesaid, is distinctly recognized and maintained.   In all but three of said sections the words " life *or* accident insurance corporation " are used, and in none of them is there any expression used indicating the recognition of any such class as life *and* accident insurance companies.   Sec. 27, ch. 59, aforesaid, appears in a somewhat changed form as sec. 1220.   It will be at once seen from reading this section that it does not name or recognize any such class of insurance companies as a life *and* accident company.   It provides that " every company transacting the business of *life or accidental insurance* in this state shall pay " an annual license fee of $300 for transacting " such business," and, in addition, each company organized under the laws of this state shall pay two per cent. of its receipts for premiums received in this state during the preceding calendar year.   It appears from the revisers' note to this section that it was considered to be the same in effect as sec. 27, ch. 59, aforesaid, omitting an exemption clause which was included in another chapter of the statutes. Thus it appears that both the revisers and the legislature of 1878 construed ch. 59, Laws of 1870, as making two classes of companies, namely, life companies and accident companies, and no others.   But, even were no weight to be

given to this legislative construction, and conceding that ch. 59, aforesaid, recognized a life *and* accident company as a member of a distinct and third class, it is difficult to see how that class survived the legislation of 1878. That legislation was a complete revision of the whole law upon the subject, and hence operated to repeal the previous provisions by necessary implication; but not only was there this implied repeal, but by sec. 4978, R. S., ch. 59, Laws of 1870, was expressly repealed *in toto*.

Thus it appears that in 1878 all words indicating that there was or might be such a thing recognized by the insurance commissioner as a "life *and* accident insurance company" as a separate class or kind of insurance corporations disappeared entirely from the statute book. The law as it then stood recognized a life insurance company and an accident insurance company, and placed upon them substantially the same requirements and restrictions as to their capital, reports, investments of funds, etc. It then provided that every company doing a life *or* accidental insurance business in this state should pay an annual license fee "for transacting such business" of $300, and that domestic companies should pay two per cent. of their cash premium receipts additional. The language here indicates plainly and unmistakably that the license fee is a license to transact the business either of life or accident insurance, and not both. In other words, the license fee is levied upon the business, and not upon the company. Thus, when the revision of 1878 went into effect, the law as to insurance license fees stood as follows: All foreign fire and inland navigation insurance companies were required to pay two per cent. of the preceding year's gross income on business transacted within the state. R. S. 1878, sec. 1219. All foreign life *or* accident companies were required to pay $300 per annum for transacting "such" business. All domestic life *or* accident companies were required to pay, in

addition to the $300, two per cent. upon their cash receipts. for premiums on Wisconsin business done during the preceding year. R. S. 1878, sec. 1220. The discrimination in favor of foreign life or accident insurance companies is very apparent. This discrimination was evidently discovered in 1880, and an attempt was made to correct it, so far as accident insurance was concerned, by ch. 105 of the laws of that year, which was amended by ch. 227 of the Laws of 1882 as to certain matters not material to this question. This act, as so amended, appears as sec. 1953a, S. & B. Ann. Stats. By this act it was provided, in substance, that it should be lawful for foreign accident insurance companies to insure individuals against injuries, disablement, or death from accident; also to insure against certain other risks not included within the term "life insurance," under authority to be issued by the insurance commissioner; and that such companies should possess a. paid-up capital of $100,000, and that such company should have the same amount deposited with the insurance department of its home state, and should file annual statements, and "be subject to the same fees and taxes as are now paid by fire insurance companies doing business in this state." Although this act was not in terms denominated an amendment to sec. 1220, R. S., its legal effect as such is too plain for argument. It manifestly added to the license fee required of a foreign company doing an accident business in this state by sec. 1220 the fee required in case of a foreign fire insurance company, which, as we have seen, was two per cent. of its gross income upon business transacted within this state during the preceding year. We are unable to see any other construction which can be placed upon the act without emasculating it to such an extent as to make it absurd.

But it is contended that there has been a practical construction placed upon the law by the insurance department

·of the state from the year 1880 up to the year 1895, which must be now considered as binding upon the court. It appears that the various insurance commissioners have each year during that time accepted $300 from the plaintiff company, and issued annual licenses, under which the plaintiff has done both a life and an accident business in this state, .and that one of such licenses was issued after obtaining the written opinion of the then attorney general upon the question to that effect. The doctrine of practical construction ·of a doubtful statute is well understood, and it has been recognized and acted upon by this court. *Scanlan v. Childs,* 33 Wis. 663; *State ex rel. Hudd v. Timme,* 54 Wis. 318. It ·is an absolute requisite, however, in the application of the ·doctrine, that the law so construed must be doubtful, ambiguous, or uncertain. It can have no force against plain language. "A customary violation of the plain language of the law gives no authority for continuing such violation." *State ex rel. Raymer v. Cunningham,* 82 Wis. 39–50; Suth. Stat. Const. § 308; *State ex rel. Weiss v. District Board of School Dist. No. 8,* 76 Wis. 177. There is in this case no ·doubtful or ambiguous statute to be construed, and has not been certainly since the repeal of ch. 59, Laws of 1870.

These conclusions determine this action, and render it certain that the plaintiff was not entitled to the injunction asked for. It had not paid the license fees required by the plain provisions of the law for the transaction of accident insurance business for the current year, and consequently it was the duty of the insurance commissioner to revoke the license which had been erroneously issued. Whether the ·commissioner had a right to revoke the license in default of the payment of the two per cent. fee upon previous years' business for all the years during which it had not been paid is a serious question, but one not necessary to be decided, and, in the absence of full argument, we do not deem it proper now to decide it. It is decisive of this case that the plaintiff

had not paid the legal fees for the current year, and consequently was in no position to resist the revocation of its license.

*By the Court.*— Judgment reversed, and action remanded with directions to dismiss the complaint.