THE TRAVELERS' INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant, vs. FRICKE, Insurance Commissioner, Respondent.

*February 14 — May 3, 1898.*

*Foreign insurance companies: Revocation of licenses: Interest on fees: Equity: Statute of limitations: Estoppel.*

1. Under the provisions of sec. 1955, R. S. 1878, the commissioner of insurance may revoke the existing license of any foreign insurance company to transact business in this state, for its failure or refusal to pay the lawful license fee for the license of a previous year. Such a failure or refusal is a continued failure to comply with the statute. CASSODAY, C. J., dissents.

2. The state is not estopped, by the failure of its officers to require compliance with the law at the proper time, from afterward insisting upon it; nor, the law being plain, can the doctrine of practical construction be applied to such action.

3. The license fee is not a tax, but a condition precedent to the plaintiff company's enjoying the privilege of doing business in this state, and by accepting such license and doing business under it the company bound itself to comply with the law.

4. Unpaid license fees bear legal interest from the various dates when they ought to have been paid.

5. A corporation standing confessedly in arrears to the state in large sums cannot invoke the aid of equity to restrain the commissioner from an effort to enforce the law.

6. The plaintiff being a foreign corporation all of the time and having its residence in another state, the statute of limitations does not apply in its favor; nor is it applicable in an action in equity to prevent the insurance commissioner revoking its license.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed*.

This is an action in equity, brought to enjoin the defendant, who is the insurance commissioner of the state of Wisconsin, from revoking a license issued by said commissioner to the plaintiff March 1, 1896. The facts in the case are not materially in dispute, and are as follows: Since the enactment of the Revised Statutes of 1878, up to the time of the commencement of this action, the plaintiff has done both a life and accident insurance business within this state, under licenses issued annually by the various insurance commissioners. During that time the plaintiff has paid, as a license fee for each year, only the sum of $300 up to the year 1895, since which time it has also paid two per cent. upon its gross accident business within the state, pursuant to the decision of this court in a previous case between the same parties, reported in 94 Wis. 258. In December, 1896, the insurance commissioner demanded of the plaintiff, in substance, that it should pay an additional $300 license fee for the transaction of its accident business for each year since 1880; also the two per cent. tax for each year since 1880, with legal interest on said sums from the 1st of March in each year, and threatened to revoke the license issued March 1, 1896, in default of such payment. The total amount of the sum so demanded, with interest, is $35,297.74. The plaintiff declined to pay this sum, and immediately brought this action in equity to enjoin the commissioner from revoking its license. The circuit court held, upon these facts, that the insurance

commissioner was authorized to revoke its license, and dismissed the complaint, and from this judgment the plaintiff appeals.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas* and *F. C. Winkler*. Among other things, they argued that the license fee is a tax, and, in the absence of any provision for the collection of it by action, no action would lie. *Mühlenbrink v. Long Branch Comm'rs*, 42 N. J. Law, 364; *License Tax Cases*, 5 Wall. 462, 474; *Postal Tel. Cable Co. v. Charleston*, 153 U. S. 693; *Adams Exp. Co. v. Owensboro*, 85 Ky. 265; *Comm. v. Stodder*, 2 Cush. 562, 572–3; *In re Wan Yin*, 22 Fed. Rep. 701; Cooley, Const. Lim. (6th ed.), 242, 243, 611. A tax can be collected only at the time and in the manner provided by statute. The fee for a license is to be collected before that is issued. No right of action therefor is given to the state. *Lane Co. v. Oregon*, 7 Wall. 71, 80; *Camden v. Allen*, 26 N. J. Law, 398; *Baldwin v. Hewitt*, 88 Ky. 673; *Louisville Water Co. v. Commonwealth*, 98 id. 244; *State v. B. & O. R. Co.* 41 W. Va. 81; *Monterey Co. v. Abbott*, 77 Cal. 541; *Packard v. Tisdale*, 50 Me. 376. License fees, being taxes and not debts, do not bear interest. *State v. S. W. R. Co.* 70 Ga. 11, 33; *W. U. Tel. Co. v. State*, 55 Tex. 314; *Shaw v. Peckett*, 26 Vt. 482; *State ex rel. Brennert v. Farrier*, 47 N. J. Law, 75; *Louisville & N. R. Co. v. Hopkins Co.* 87 Ky. 605; *Perry v. Washburn*, 20 Cal. 318, 350. The commissioner of insurance has no power to revise the action of his predecessor or to revoke a license granted by him. His power to revoke is limited to licenses granted by himself. *Comm. v. Pennsylvania Co.* 145 Pa. St. 266, 280; *Philadelphia v. Ridge Ave. R. Co.* 142 id. 484.

The *Attorney General* and *John L. Erdall*, first assistant attorney general, for the respondent, contended that, for the failure of a foreign insurance company to comply with any of the provisions of the law applicable thereto, the commis-

sioner was required by sec. 1955, R. S. 1878, to revoke its license, without any limitation as to the time of such failure. The requirement of a license fee is not a tax, but a condition of permission to do business, and the company, by accepting a license, undertook to pay it. *Horn Silver M. Co. v. New York,* 143 U. S. 305; *Hooper v. California,* 155 id. 648. An action in the nature of debt or *assumpsit* will lie. *Fire Department of Oshkosh v. Tuttle,* 50 Wis. 552; *Bath v. Freeport,* 5 Mass. 325; *Pawlet v. Sandgate,* 19 Vt. 621.

The following opinions were filed March 1, 1898:

WINSLOW, J. In the former action in equity brought by this same company, and reported in 94 Wis. 258, the question presented and decided was whether the insurance commissioner had power to revoke the license of the plaintiff to do an insurance business in this state on account of failure to pay the license fees required by law for the year for which the license was issued. In the present suit the question presented is whether the insurance commissioner has power to revoke the defendant's license for the current year, on account of its failure to pay the full license fees accruing for past years, during which it has done business in this state under license.

We have no intention of reviewing again the questions discussed and decided in the previous action. The statutes were then deliberately considered and construed, and the conclusions then reached are entirely satisfactory; and, so far as applicable, they will be applied to the present case. It was then held, in effect, that the annual license fees required to be paid by foreign insurance companies desiring to do business in this state were levied upon the *business* transacted, and not upon the company transacting the business; that ch. 105, Laws of 1880 (sec. 1953a, S. & B. Ann. Stats.), was an amendment simply to sec. 1220, R. S. 1878, and that it added to the fees previously required the pay-

ment of two per cent. upon the gross income received upon accident business during the preceding year; that the doctrine of practical construction had no application, because the statute was plain, and not doubtful; and that the commissioner had a right to revoke the license for the current year on account of failure to pay the two per cent. upon the previous year's business.   The question of the power of the commissioner to revoke the current license on account of past defaults in payment of license fees was expressly reserved for future consideration, and that is the question now to be decided.   When it was held that the license fees were fees levied upon the business, and not upon the company transacting the business, it necessarily followed, under the provisions of sec. 1220, R. S. 1878, that a foreign company which transacted both life and accident business in this state was required to pay two fees of $300 each, and, in addition, was required to pay two per cent. upon its previous year's income arising from the accident business.   The plaintiff company has been such a company ever since the enactment of the Revised Statutes, and it has paid but one fee of $300 during each year, although doing both kinds of business; and hence it has failed to comply with the law in this respect, as well as in omitting to pay the two per cent. additional required by ch. 105, Laws of 1880.

The default of the plaintiff company being established, the vital question for consideration is as to the power of the commissioner to revoke an existing license on account of such default.   It is not, and cannot now be, denied that the plaintiff company could only transact business in this state by permission of the state, and under such conditions as the state might impose.   This principle has been laid down again and again in no uncertain terms.   RYAN, C. J., in *State ex rel. Drake v. Doyle*, 40 Wis. 175, says: "Save by voluntary license of the state, the insurance company has no right to carry on its business within the state.   .   .   .   Authorizing such

license, out of its mere discretion it was competent for the legislature to impose any conditions, reasonable or unreasonable, and to provide for revocation, upon any cause or no cause, in any manner it might see fit." See, also, *Fire Department of Milwaukee v. Helfenstein*, 16 Wis. 136; *Lewis v. Am. S. & L. Asso.* 98 Wis. 203.

These propositions being impregnable, we may at once proceed to consider what power of revocation the legislature has given to the commissioner of insurance. Sec. 1955, R. S. 1878, provides as follows: "If any such corporation [referring to foreign insurance corporations] shall violate or fail to comply with any provision of law applicable thereto, or in case its capital shall be impaired and shall not be made good within such time as the commissioner of insurance shall require, according to section 1968, it shall be the imperative duty of said commissioner to revoke any and every authority, license or certificate granted to such corporation, or any agent thereof, to transact business in this state," etc. It is argued that the power here granted to the commissioner is "not a power of revision of the past, but of provision for the future;" that the language is prospective, and not retrospective; and that, for defaults occurring during the existence of previous annual licenses, there can be no revocation of an existing license the fees for which have been fully paid. Carried to its legitimate result, this argument would produce this result: that, when a license was once issued by the commissioner, all past matters, even in connection with the issuance of the license itself, would become a sealed book. It might have been obtained without compliance with the necessary conditions, and yet it could not be revoked, because the power of revocation is only given to be exercised upon violations occurring after the issuance of the license. We do not say that this was the argument made by the appellant, but that such is the ultimate effect of the argument.

It is manifest, of course, that such could not have been

the intent, of the legislature; and it was substantially ad-
mitted on the argument that, in case of the failure to com-
ply with any of the conditions which are a prerequisite to
the issuance of a given license, that license might be revoked;
but it was argued that this was the extent of the power of
revocation, and that for the defaults occurring during the
existence of previous licenses there could be no revocation.
Certainly, this position seems reasonable, as applied to de-
faults which might be called "temporary," as distinguished
from "continuing" defaults.   For instance, in case the com-
pany had failed during some previous year to file a copy of
its charter or appoint its resident attorney, but had supplied
the omission before the issuance of the current license, it
would seem that there could scarcely be a revocation of the
existing license on account of such default.   But can such
an argument be applied to a failure to pay the lawful license
fee?   Is not this a continuing failure to comply with the
law, and just as much a present failure as it was during the
year when it occurred?   Certainly, it was a legal duty then
to pay the required fee.   Did the duty cease at the end of
the year?   Has the lapse of time made it any the less a
duty?   Has the offense been condoned by the issuance of new
licenses, decorated with gilt seals?   So long as the fee *remains*
unpaid, is it not a present failure to comply with the law,
just as much as it was in the year when it occurred?   We
are unable by any chain of logical reasoning to say that this
failure to comply with the law is a failure which is past and
closed, and that it is not an existing failure as well.   If
it be a present existing failure, then the present existing
license may be revoked because of such failure, under the
strictest construction that can be given to the law.

It avails nothing to say that this license fee is essentially
a tax, and that no action lies to recover a tax unless it be
given by express statutory enactment.   Concede for the
moment that this be so, the failure to pay the lawful license

The Travelers' Ins. Co. vs. Fricke.

was none the less a failure to comply with the provisions of the law when it occurred, and none the less a continuing failure up to the present time. Is it a hardship? No more a hardship now than it would have been if the annual amounts had been paid at the times required by the law. If a hardship at all, it is a hardship imposed by the law itself, and the legislature had full power to impose the hardship, if such in fact it be. But, whatever the rule be in other jurisdictions, it is not a tax under the decisions of this court. It was distinctly held by this court more than thirty years ago that substantially such a requirement as the one before us was not an exercise of the power of taxation. In *Fire Department of Milwaukee v. Helfenstein,* 16 Wis. 136, this court had before it a law requiring the agents of foreign insurance companies to pay to the fire department of the city of Milwaukee annually two per cent. of the premiums collected by them in such business, and the law was attacked as an unconstitutional exercise of the taxing power, in that it violated the rule of uniformity in taxation. In passing upon this contention, it was said that this requirement was not an exercise of the power of taxation, " but only a proper exercise of the police power inherent in the sovereignty of the state." The same general principle was afterwards approved and applied to laws requiring the payment of dog licenses and licenses for the sale of liquors (*Tenney v. Lenz,* 16 Wis. 566; *State ex rel. Henshall v. Ludington,* 33 Wis. 107); and it must be considered as the settled law of this state.

The principle is not infringed upon by the decisions holding that the license fees required of railroad companies for operating their roads and cars within this state are, in substance, taxes. These license fees are imposed upon an inherently lawful business, in lieu of taxes, the property of the company being entirely exempted from ordinary taxation, and are necessarily construed to be in the nature of taxation, and not as an exercise of police power; but in none

of these cases are the principles laid down in *Fire Depart-ment of Milwaukee v. Helfenstein, supra,* in any respect over-ruled. Being a mere condition imposed as the price of a privilege which might be refused entirely, it logically fol-lows that, when the privilege is requested, obtained, and used, the corporation obtaining the privilege impliedly agrees to the conditions which go with it and upon which alone it can be obtained. *Fire Department of Oshkosh v. Tuttle,* 48 Wis. 91; *S. C.* 50 Wis. 552.

By accepting the license and doing business under it, the company undoubtedly bound itself to comply with the law governing the issuance of the license. *Lewis v. Am. S. & L. Asso.* 98 Wis. 203. Nor, upon familiar principles, is the state estopped from now insisting upon the condition on account of the failure of its officers to require compliance with the law at the proper time. The law was plain, and, as before stated, there was no room for the application of the doctrine of practical construction. Nor does the statute of limita-tions apply, for two reasons: (1) The plaintiff was a for-eign corporation all of the time, and had its residence in an-other state. *Larson v. Aultman & Taylor Co.* 86 Wis. 281. (2) This is not an action to collect the unpaid fees, but simply an action in equity, to prevent the commissioner from re-voking the license.

We perceive no error in adjudging that the unpaid license fees bear legal interest from the various dates upon which they ought by law to have been paid. The plaintiff has not only had all the benefit of its license, but has also had the use of the license moneys during all the time, and presum-ably has obtained legal interest thereon. During that time, also, the state has been deprived of the use of the money which it was entitled to have in its treasury. If, as held in this opinion, there was an implied agreement by the com-pany when it obtained a license and did business thereunder, that it would perform all the requirements of the law, in-

cluding the payment of the fees required at the proper time, no reason appears why the unpaid fees should not bear interest.

In connection with the entire matter, it should be remembered that this is an action in *equity*, and not a mere action at law. Even supposing that the propositions here decided were doubtful, it would not necessarily follow that the plaintiff, standing confessedly in arrears to the state in sums aggregating many thousands of dollars, could invoke the aid of equity to stay the hand of the commissioner in an apparent effort to carry out the plain will of the law-making power.

The judgment of the circuit court was, in our opinion, right.

*By the Court.*— Judgment affirmed.


CASSODAY, C. J.    All agree that during the years in question the state had the absolute power to exclude foreign insurance companies from doing any business in this state, and that such plenary power included the authority to prescribe the conditions upon which such companies might be allowed to do business within the state. Of course, each company was at liberty to accept or reject such conditions. Without attempting any argument or to give any reasons therefor, I am forced to dissent from the conclusions reached by my brethren, on the ground that the statute which makes it the imperative duty of the commissioner to revoke any license granted to such corporation for any violation or failure "to comply with any provision of law *applicable* thereto" (S. & B. Ann. Stats. sec. 1955), is not, in my judgment, broad enough to cover and include failures to pay license fees which might properly have been exacted by the commissioner for licenses which expired before the license here sought to be revoked was issued, but which was never before exacted. By granting such expired license without exacting the full amount which might have been exacted

for the same, and then, after the expiration of such license, to exact and enforce payment of the balance, would, necessarily, deprive the company of the legal right which it clearly possessed, of rejecting the conditions which are for the first time exacted. In other words, by paying all that was exacted for such expired license at the time it was granted, the state is in no position, after such license has expired, to claim an implied obligation to pay an additional sum, which the company had the legal right to reject had it been made when that license was issued, or at any time during the existence of such license. These views have some support in the construction which this court has heretofore given to this and other sections of the statute applicable. *State v. U. S. Mut. Acc. Asso.* 69 Wis. 76.

True, such exaction was not a tax, within the meaning of the provision of our state constitution which requires the rule of taxation to be uniform. Nor was it a *direct* tax in any sense, since it was not imposed specifically upon any particular property, person, or corporation. *Pollock v. Farmers' L. & T. Co.* 157 U. S. 429; *S. C.* 158 U. S. 601. But it was, nevertheless, an indirect tax in the same sense that an impost, duty, or excise is a tax; and that they are species of taxes is elementary. 1 Story, Constitution, § 950; *State ex rel. Sanderson v. Mann,* 76 Wis. 475. In my judgment, such exaction which the state might have made, and which, if made, the company was at liberty to reject, but which was never, in fact, made and insisted upon, cannot properly be regarded as an obligation implied by law upon contract or otherwise, even if such obligation might be implied from the imposition of a direct tax. The company was only obliged to perform such conditions as it voluntarily accepted and agreed to perform; and the one now sought to be enforced is a condition which it expressly repudiated, and never agreed to perform.

Upon a motion for a rehearing the appellant argued that, prepayment of the fee being a condition to the issuing of a

license, no contract or promise to pay can be implied after it has been issued. The granting of each year's license is an independent transaction, and a failure to pay the license fee for one year cannot affect the license for a subsequent year. A foreign corporation which has acquired a domicile in this state for the purposes of litigation is not a nonresident in such sense as to suspend the operation of the statute of limitations against it. 6 Thompson, Corp. § 7841.

The motion was denied May 3, 1898.

The right of a foreign corporation to plead the statute of limitations is the subject of a note to *Winney v. Sandwich Mfg. Co.* (86 Iowa, 608), in 18 L. R. A. 524.— REP.