THE STATE EX REL. THE FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant, vs. FRICKE, Commissioner of Insurance, Respondent.

*November 23, 1898 — February 21, 1899.*

*Accident insurance: License fees: Mandamus: Statutes: Practical construction.*

1. The annual license fee of $300, required by sec. 1220, R. S. 1878, to be paid by foreign accident insurance companies desiring to do business in this state, is levied upon the business transacted, and not upon the companies transacting the business. Ch. 105, Laws of 1880, was simply an amendment, which added to the fee previously required a payment of two per cent. upon the gross income received upon accident insurance business during the preceding year. *Travelers' Ins. Co. v. Fricke*, 94 Wis. 258, and 99 Wis. 367, followed.

State ex rel. Fidelity & Casualty Co. of New York vs. Fricke.

2. From 1880 to 1897 a foreign accident insurance company was licensed to transact business in this state without paying the $300 license fee required by sec. 1220, R. S. 1878. As a condition for renewing its license for 1898, the insurance commissioner required it to pay $300 for each year it had so transacted business, with interest from the time it became due. *Held*, that since the company's right to transact business in this state is a matter of privilege, and the legislature has authorized the commissioner to revoke a license for past violations, or withhold a license until the company has complied with all legal requirements, a writ of *mandamus* to compel the issuance of the license without the payment of said arrearages was properly refused.

3. The fact that the statute of limitations may have run as to part of said arrearages would not prevent the commissioner from requiring payment of that part as a condition of the issuance of a new license; nor would the fact that no demand for arrearages was made until November, 1897, render the claim so stale that interest should not be allowed.

[4. Whether a foreign corporation doing business in this state under legislative authority may, in a proper case, take advantage of the statute of limitations, not determined.]

5. The statute not being doubtful or ambiguous, the mere silence of the state officials, or their neglect to enforce the plain requirements of the law, is not sufficient to relieve the companies from their obligations, on the ground of practical construction.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The relator, *The Fidelity & Casualty Company of New York*, filed its petition for an alternative writ of *mandamus* in the circuit court for Dane county, claiming that the defendant, as commissioner of insurance of this state, unlawfully refused to issue it a license to do business in this state for the year 1898. The alternative writ was issued, and due return made thereto. The issue joined was tried by the court, and his findings thereon may be summarized as follows:

The relator is a corporation organized under the laws of the state of New York, and authorized to do the business of accident insurance. The company first applied to do

business in this state in 1880, and each year since has applied for and received license to transact business in this state, up to March 1, 1898. Each year it has paid to the state treasurer two per cent. of its gross income earned in this state, and has complied with all the requirements imposed by the laws of this state, except that it has not paid the annual license fee of $300 required by sec. 1220, R. S. 1878. No demand was ever made upon said company, for such fees prior to November, 1897, at which time, the defendant made such demand and required as a condition for renewing its license, which would expire on March 1, 1898, that it pay an annual license fee of $300 for each year it had done business in this state, with interest at the legal rate on each such license fee from the date it became due. The company refused to pay such fees or any part thereof. The amount of such fees on March 18, 1898, with interest, was $9,076.70. The company applied for license for the year 1898, but the defendant refused to issue one, because it had failed to pay the license fees above mentioned.

Under this state of facts the court concluded that the relator was an accident insurance company, within the meaning and purview of ch. 105, Laws of 1880, and sec. 1220, R. S. 1878, and not entitled to a license to transact business in this state until it had paid all back license fees before mentioned, with interest, and that upon such payment, and not otherwise, the peremptory writ might issue. The judgment entered upon such findings is sought to be reversed on this appeal.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* counsel, and oral argument by *F. C. Winkler.* They argued, *inter alia,* that the payment of $300 being imposed upon foreign life and accident insurance companies " as an annual license fee for transacting such business," the imposition by subsequent law upon such a company of any other pecuniary duty " as an annual license fee

State ex rel. Fidelity & Casualty Co. of New York vs. Fricke.

for transacting its business" would *ipso facto* supersede the former provision. It could not be held to be "in addition," unless there were adequate words to that effect. *Gurr v. Scudds*, 11 Exch. 191; *U. S. v. Isham*, 17 Wall. 496, 502; *Partington v. Attorney General*, L. R. 4 Eng. & Ir. App. 100, 122; *Powers v. Barney*, 5 Blatchf. 202; *Russell v. Wigglesworth*, 2 Story, 369, 373; *State v. Pullman's P. C. Co.* 64 Wis. 89, 103. Although ch. 105, Laws of 1880, does not say *in hæc verba* that such companies shall pay two per cent. of their gross premiums "as a license fee," etc., yet in saying that they "shall be subject to the same fees and *taxes* as are now paid by fire insurance companies," it necessarily means that they shall pay them for the same purposes and with the same effect. That act evinces a purpose to establish equality between accident and fire insurance companies, applying to them the more just and equitable rule of prorating the license fee to the amount of business done. It was the obvious purpose of ch. 105 to allow accident companies to make insurance not only against bodily injuries or death, but also against accidents to property, against dishonesty in persons holding places of trust, and the like, and it would be unjust to require those different classes of companies to pay the same arbitrary sums. There is no plain language in any of these statutes which requires payment of both the $300 and the two per cent., and hence practical construction may be applied to them.

*John L. Erdall*, first assistant attorney general, for the respondent.

The following opinion was filed December 16, 1898:

BARDEEN, J. The facts at issue in this litigation are very much the same as were involved in the cases of *Travelers' Ins. Co. v. Fricke*, 94 Wis. 258, and *S. C.* 99 Wis. 367. In those cases the company had paid the $300 license fee, and not the two per cent. on its gross earnings. In this case the

relator had paid the two per cent. on its income, as required
by ch. 105, Laws of 1880, but has not paid the $300 annual
license fee imposed by sec. 1220, R. S. 1878. In his brief,
counsel for relator, after reviewing the facts involved in the
former litigation, said, " The question, therefore, whether an
accident insurance company organized under the laws of an-
other state was, after ch. 105, Laws of 1880, required to pay
$300 per annum *in addition* to the ' fees and taxes ' thereby
imposed, although discussed, has not been adjudicated by this
court." Pursuant to this statement, counsel has submitted
a vigorous and carefully prepared argument in his brief, and
pressed the same with great vehemence at the bar, as to the
construction this court ought to give to the statutes men-
tioned.

The earnestness of the counsel, and the importance of the
questions involved, have induced us to carefully review the
former litigation and the questions therein determined. We
find it entirely unnecessary to attempt to justify those de-
cisions. They represent the deliberate judgment of the court,
after a careful and exhaustive argument and consideration
of all of the questions involved. The suggestion of counsel
that the construction of the statutes mentioned was not nec-
essary for the determination of those cases is met by casual
reading of the opinions filed. The question was certainly
presented, carefully argued, and deliberately considered by
the court. Speaking of ch. 105, Mr. Justice WINSLOW says:
" Although this act was not in terms denominated an amend-
ment to sec. 1220, R. S., its legal effect as such is too plain
for argument. It manifestly added to the license fee re-
quired of a foreign company doing an accident business in
this state by sec. 1220 the fee required in case of a foreign
fire insurance company, which, as we have seen, was two
per cent. of its gross earnings upon business transacted within
this state during the preceding year. We are unable to see
any other construction which can be placed upon the act

without emasculating it to such an extent as to make it absurd." 94 Wis. 258. Again, in the second *Travelers' Case*, 99 Wis. 367, the following language was used: " We have no intention of reviewing again the questions already discussed and decided in the previous action. The statutes were then deliberately considered and construed, and the conclusions then reached are entirely satisfactory, and, so far as applicable, they will be applied to the present case. It was then held, in effect, that the annual license fees required to be paid by foreign insurance companies desiring to do business in this state were levied upon the business transacted, and not upon the company transacting the business; . . . that ch. 105 was an amendment, simply, to sec. 1220, R. S., and that it added to the fees previously required a payment of two per cent. upon the gross income received upon accident business during the preceding year." In an argument for a rehearing, counsel again attacked the conclusions of the court with great vigor, but the original decisions were adhered to.

In view of this situation, we do not think there is any room for saying that the question was passed upon only incidentally, and that the conclusion reached was not the result of deliberate judgment. That we may not be misunderstood, we here deliberately assert that in our judgment the same legal questions here contended for by the relator were necessarily involved in the decisions in the *Travelers' Cases*, that they were there deliberately considered and decided, and that we are now satisfied that the conclusions there reached were correct and must govern this case. The application of the doctrine of practical construction placed upon the law by the insurance department, and the question of requiring the company to pay interest upon the amount due the state, were submitted, argued, and decided adversely to the company. What was said in the former cases on these questions renders a new discussion entirely unnecessary.

State ex rel. Fidelity & Casualty Co. of New York vs. Fricke.

The findings of the trial court upon the admitted facts show that the insurance company has transacted business in this state since 1880, and has not paid the annual license fee of $300 required by sec. 1220, and that, before it can rightfully compel a license to be issued to it, it must pay the sum in arrears, with legal interest. In the first *Travelers' Case* it was held by this court that, when a license had been granted to an accident insurance company upon the payment only of the $300 fee prescribed in sec. 1220, it might be revoked by the insurance commissioner upon refusal to pay the additional fee required by ch. 105, Laws of 1880. In the second case it was ruled that a current license might be revoked for the refusal of the company to pay amounts due under the statute for past years' business. Following the logic of these decisions, the trial court upheld the commissioner in his requirement that these arrearages should be paid before a new license would be issued. In this ruling he was manifestly right, and we have no disposition to disturb it.

The point is made, however, that as no demand was made for these arrearages until November, 1897, the claim is *stale*, and interest ought not to be required; also, that, under the statute, the relator, having appointed an attorney upon whom process might be served in this state, thereby obtained a legal residence here, and was therefore entitled to the benefit of the statute of limitations. One important fact must not be lost sight of, and that is that this is not an action brought by the state to recover this money. The relator can only do business in this state by sufferance. When it seeks that privilege, it must consent to and obey the conditions attached to the liberty sought for. The legislature has seen fit to vest in the commissioner of insurance the power to revoke a license for failure to comply with any provision of law enacted for the regulation of that business. As an incident to that power, he is authorized to revoke

licenses for past violations, or withhold a license until the insurance company has fully complied with all legal requirements. The terms imposed as a condition for granting the peremptory writ prayed for are strictly in accord with the holding in the last *Travelers' Case.* No good reason is perceived why the rule there announced is not applicable to the case at bar. Courts have a discretion in issuing writs of *mandamus* merely in aid of private right, and, in view of what has already been said, we do not feel that such discretion has been wrongly exercised in this case. We desire, however, to leave open and undetermined the question of whether a foreign corporation doing business in this state under legislative authority may not, in a proper case, have the advantage of the statute of limitations.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *Winkler, Flanders, Smith, Bottum & Vilas,* and a brief for the respondent by *E. R. Hicks,* Attorney General.

The following opinion was filed February 21, 1899:

BARDEEN, J. Of course it is understood by this court that the *facts* involved in the different cases that have been decided were not exactly the same, but the *law* announced in the first *Travelers' Case* has entered into and been controlling in each subsequent case. [*Travelers' Ins. Co. v. Fricke,* 94 Wis. 258.] In that case it was said that sec. 1220, R. S. 1878, imposed a license upon the *business* of insurance, and not upon the company transacting it. The statute speaks of two kinds of insurance business,— life and accidental,— and therefore, if a company transacts both kinds of business, it must pay the required license for each. If it does but one kind of business, then it must pay the fee imposed by

law for that privilege. The first decision also said that ch. 105, Laws of 1880, in legal effect, was an amendment to sec. 1220, and therefore the company transacting the business of accident insurance must pay two per cent. of its gross premiums to the state, as well as the fee required by the other statute. Independent of the fact that the Travelers' Company was transacting both kinds of business, the two *Travelers' Cases* settled the law that a company doing the business of accident insurance in this state must not only pay the $300 license required by sec. 1220, but also the two per cent. fee imposed by ch. 105. Now, it is urged that, inasmuch as these decisions were made with reference to a company transacting both kinds of business, they have not decided that an accident company which does no life insurance business is bound to pay the same fees. True, they have not in terms so decided. But what significance has the fact that the Travelers' Company was doing both kinds of business? Absolutely none. So far as those decisions are concerned, the case stands exactly as though the Travelers' Company as a life insurance organization, and the Travelers' Company as an insurer against accidents, were separate and distinct companies. When it was said that the license was upon the *business* conducted, it made no difference that the company was doing other kinds of business. The inquiry was, What are the obligations of the law upon a company doing the business of accident insurance in this state? The company sought to evade the consequences of the construction of the law contended for by the state, by showing that it transacted both kinds of business; that it had already paid one license fee of $300; and it was argued that this was the only fee or tax required by law from such companies. In determining this question, it became necessary to review the legislation on the subject, and to construe and determine the relation between sec. 1220 and ch. 105, Laws of 1880.

We have already referred to the conclusion arrived at in the first of these cases. The second case [99 Wis. 367] involved the right of the state to insist upon the payment of an additional license fee of $300 for the transaction of the company's accident business. It seems to have been assumed that the fee that had been paid by the company was for the privilege of doing its life insurance business. In this, latter decision, Mr. Justice WINSLOW says: "When it was held that the license fees were levied upon the business, and not upon the company transacting the business, it necessarily followed, under the provisions of sec. 1220, R. S. 1878, that a foreign company which transacted both life and accident business in this state was required to pay two fees of $300 each, and, in addition, was required to pay two per cent. upon its previous year's income arising from the accident business." The company was not required to pay the additional fee of $300 because it was doing *two kinds of business*, but because it was doing an accident business, for which no fee had been paid. When it is assumed that the license is upon the business conducted, the conclusion, and the only conclusion that can possibly follow, is that *any* company doing the business of accident insurance in this state must pay the fees imposed by both of the statutes mentioned. If the company conducts a life insurance business alone, it pays the fee required by sec. 1220. If it does only an accident business, it must pay the fee required by this section, and the additional fee imposed by ch. 105. If it does both kinds of business, then it must pay both fees. Any other construction would be absurd.

On the question of practical construction, the first case decided said, in effect, that these statutes were not doubtful or ambiguous, and that "a customary violation of the plain language of the law gives no authority for continuing such violation." We still adhere to that ruling. The mere silence

State ex rel. Metropolitan Plate Glass Ins. Co. of New York vs. Fricke.

of the state officials, or their neglect to enforce the plain requirements of a law, is not sufficient to relieve the party from its obligations.

*By the Court.*— The motion for a rehearing is denied, with $25 costs.