YEOMEN MUTUAL LIFE INSURANCE COMPANY, Appellee, v. RAY MURPHY, Commissioner of Insurance, et al., Appellants.

No. 43914.

SEPTEMBER 21, 1937.

OPINION MODIFIED AND PETITION FOR REHEARING WITHDRAWN DECEMBER 1, 1937.

H. W. Pitkin, J. G. Bowes, Ray Yenter, and Carr, Cox, Evans & Riley, for appellee.

John H. Mitchell, Attorney General, Don W. Burington, Asst. Attorney General, and Lehan T. Ryan, for appellants.

MITCHELL, J.—"The Brotherhood of American Yeomen" was organized as a fraternal beneficiary association in 1897 and its articles recited that the incorporators "associate themselves as a body corporate in law for the purpose of perpetuating a fraternal beneficiary society under the provisions of chapter 21, Acts of the 26th General Assembly, for the sole benefit of its members and their beneficiaries and not for profit." There were certain amendments to the articles of incorporation, at various times up to May 1, 1932, none of which changed the character of the association and practically all of them had to do with the amount that was to be paid for the insurance carried by the members. On May 1, 1932, exercising the privileges extended by sections 8869 to 8884, inclusive, of the 1935 Code, the society amended its articles of incorporation to transform itself into a level premium mutual life insurance company, and included the following provisions therein:

"Sec. 2. This corporation shall be a continuation of the original corporation and shall retain all its original rights, powers, privileges and franchises so far as may be necessary to carry out all its contracts heretofore made with its members as provided by Section 8882, Chapter 402, of the 1931 Code of Iowa.

"Sec. 3. This amendment shall not be construed to affect existing suits, claims or contracts. Subject to the foregoing, these Articles are and shall be construed as a substitute for all existing Articles of Incorporation and amendments thereto."

The affairs and conditions of the Brotherhood of American Yeomen were examined by the insurance department of the state biennially, as required by law. Annual reports were filed, and all forms of benefit certificates were approved. An annual certificate of authority was issued by the insurance commissioner, authorizing the Brotherhood to transact business as a fraternal beneficiary association, up to and including April 1, 1935.

In March of 1936 the Hon. Ray Murphy, commissioner of insurance of the State of Iowa, forwarded a written notice to the Yeomen Mutual Life Insurance Company, a corporation, that a premium tax was due and that said tax was measured by not only the amount of premiums received by the company upon its legal reserve level policies but also as measured by the assessments received by it which were paid by its members who were such members prior to May 1, 1932, holding certificates of membership as evidence of their right to the benefits of fraternal beneficiary insurance, stating he would not renew the certificate giving the Yeomen Company the right to do business in Iowa unless this tax was paid.

The Yeomen Mutual Life Insurance Company commenced this action in equity against the commissioner of insurance, the treasurer and the comptroller of the State of Iowa. It was the contention of the company that it was exempt from paying the tax under the provisions of section 7025 of the code.

The cause came on for hearing, and evidence was introduced. The lower court entered a decree, permanently enjoining defendants from collecting from plaintiff any tax, under the provisions of section 7025 of the Code, upon the amounts received by the company upon contracts of insurance from members holding certificates of membership in the Brotherhood of American Yeomen, on May 1, 1932; also enjoining the commissioner of insurance from canceling the license of the plaintiff and from refusing to issue a renewal of same.

The defendants, being dissatisfied with the decree, have appealed to this court.

Section 7025 of the 1935 Code imposes a premium tax upon insurance companies doing business in Iowa, and it was under this section that the commissioner of insurance was attempting to collect the tax in this case. The material part of that section is as follows:

"7025. Domestic companies—tax on gross premiums. Every insurance corporation or association of whatever kind or character, organized under the laws of the state of Iowa, not including county mutuals or fraternal beneficiary associations, which county mutuals and fraternal beneficiary associations are not organized for pecuniary profit, shall, on or before the first day of March of each year, pay to the treasurer of state a sum

equivalent to one per cent of the gross receipts from premiums, assessments, fees, and promissory obligations required by insurance contracts which are received during the next year preceding the first day of January last past, * * *.''

It will be noted the legislature specifically provided in this section that fraternal beneficiary associations are exempt from paying the premium tax.

Section 8777 of the 1935 Code is as follows:

''8777. Definition. A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work and representative form of government.''

 Here we have a definition of a fraternal beneficiary association. The undisputed record shows that the Brotherhood of American Yeomen established a lodge system and used the word ''homestead'' to signify the local lodge. At the end of 1931 there were in existence over one thousand ''homesteads,'' having an aggregate membership of about 135,000. In the conduct of the local lodge a ritual was used. There was provision made for the organization of a Supreme Conclave as its governing body, made up of delegates elected from state conventions, the delegates to which were in turn elected by the local lodges. There was no capital stock and no one received dividends from the association's earnings. It established an orphans' home for the care of the orphans of members of the society, and each member paid the sum of ten cents per month for the maintenance of that orphanage. In May of 1932, exercising the privilege extended by sections 8869 to 8884, inclusive, the society amended its articles of incorporation to transform itself into a level premium mutual insurance company.

There has been no question raised that the transformation proceedings were not in all respects lawful. The appellee company has conceded and has paid its liability for the tax as measured by premiums received from persons to whom policies were issued subsequent to the date of transformation. This controversy relates solely to the liability for a premium tax, as measured by the amounts received from those persons who were fra-

ternal members of the Brotherhood of American Yeomen on May 1, 1932, and who hold certificates of membership entitling them to certain insurance benefits.

It is conceded by appellants at the time of the transformation the Yeomen Society was a fraternal beneficiary association. We quote from appellants' brief and argument:

"From the facts hereinbefore set forth, it is undisputed that prior to May 1, 1932, the Brotherhood of American Yeomen carried on a fraternal beneficiary association under the provisions of Chapter 402 of the Code, and at that time they had the lodge system with ritualistic form of work and the representative form of government, and attempted to comply with the provisions pertaining to fraternal beneficiary associations."

■■■ The sole question which confronts us in this case is whether the Yeomen Mutual Life Insurance Company is required to pay a premium tax upon amounts collected from the holders of certificates of insurance issued by the Brotherhood of American Yeomen and outstanding on May 1, 1932.

Section 8869 of the 1935 Code authorizes a fraternal beneficiary association to transform itself into a legal reserve level premium company, and there then follow several sections which provide for the manner in which this may be done. Section 8881 is as follows:

"8881. Effect of reorganization—officers. Any such society so transformed, shall incur the obligations and enjoy the benefits thereof the same as though originally thus incorporated, * * *."

Section 8882 reads as follows:

"8882. Pending suits. Such amendment or reincorporation shall not affect existing suits, claims, or contracts."

When the legislature passed these sections, giving fraternal beneficiary associations the right to be transformed into an old line company, it made no provision that it was necessary to have a representative form of government or a lodge system, but specifically provided that nothing in the reorganization would change existing contracts and that the new organization must assume all of the obligations of the old contracts. This means that they should remain as before; that they should continue to be the same kind of a contract as they were before the transformation.

The certificates issued by the Brotherhood of American Yeomen and the obligations under same were assumed by the Yeomen Mutual Life Insurance Company. What did they assume? They assumed certificates which were tax exempt. And, to say that a premium tax should now be levied against the amounts collected from the holders of these certificates, would be to change these outstanding certificates, whereas the legislature said that they were to remain as they were.

Section 7025 provides that fraternal beneficiary associations are exempt from paying premium tax. Nowhere in our statutes do we find any explicit direction by the legislature that the premium tax should be collected upon these certificates issued by a fraternal beneficiary association, and assumed now, under the law, by a corporation that is no longer a fraternal beneficiary association. The provisions of section 8881 to the effect that the transformed company shall be a continuation of the original was no doubt included for the purpose of avoiding a disturbance of the status of the fraternal members and the amounts due from them. Add to this the fact that the transformation shall not affect existing suits, claims or contracts. Giving the entire framework of chapter 402 an application consistent with the policy otherwise declared, the exemption to fraternal beneficiary societies must be extended to the amount paid by fraternal members after the transformation, to the new company. The authority to transform, coupled with the limitation that the transformation should not affect existing suits, claims or contracts, with the further provision that the transformed company should be a continuation of the original, simply means that fraternals were authorized to make such changes in organization and operation as are incident to the transformation but without requiring the reclassification in so far as the relation of the appellee company to its fraternal members is concerned. The statute gives the company the right to carry on a home or orphanage. The record in this case shows that the Yeomen Mutual Life Insurance Company is carrying on an orphanage, well managed and well conducted, and that the expense of carrying on this orphans' home is paid for by the holders of fraternal certificates, to whom alone is given the privilege of having this home used by their families in case of need.

We are unable to find many cases to assist us in the solution of the problem before us. But a case exactly in point with this

has recently been decided by the supreme court of Arkansas, entitled "United Mutual Life Insurance Company of Indianapolis, Indiana, vs. State ex rel. Attorney General," opinion dated June 28, 1937, reported 108 S. W. (2d) 484, 486, written by Chief Justice Griffin Smith. We quote at length from the opinion:

"The stipulations bring appellant's predecessor into this record as a fraternal beneficiary society belonging to a group or class which may claim exemption from payment of gross premium taxes. If the Supreme Lodge Knights of Pythias had continued to transact its business here, exercising the fraternal or beneficiary characteristics pertaining to it at the time the certificates were issued, admittedly the gross premiums would not be taxable."

In the case at bar, admittedly, the premium tax which is now sought to be collected on the fraternal beneficiary certificates, could not have been collected if the American Brotherhood of Yeomen had continued.

We quote again from the Arkansas opinion:

"In the instant case it is admitted that appellant is an old line company of the class subject to taxation.

"Determination of the rights of the parties, therefore, resolves itself into this proposition:

"(a) Is there any law expressly providing that fraternal business assumed by a nonfraternal corporation is subject to taxation?

"(b) If there is no express enactment, did the General Assembly, in directing taxation of a specific class of business and exemption from taxation a different class, intend that characteristics of the activities engaged in should control?

"(c) Did the lawmakers intend that the name applied to a corporation should fix its liability and exclude proof that some of its business originated from nontaxable sources?

"Appellee does not point to any law expressly providing for the relief granted by the chancery court. Therefore, if the right to tax exists, it must be implied from legislative intent, or inferred from prior decisions of this court."

In this case there is no law expressly providing for the tax now sought to be collected, and it necessarily follows that if a right to tax exists it must be implied.

We quote again from the Arkansas case:

"It was urged that, inasmuch as the business assumed was not subject to taxation in the hands of the domestic corporation, it could not be taxed when taken over by appellant. The opinion in part says:

" 'Our interpretation is that the status of appellant is fixed in the contract as that of a purchaser of all of the assets of the Home Life Insurance Company for a valuable consideration. * * * None of the conditions, modifications, exceptions, or limitations appearing in the contract converted from a contract of purchase and sale of the assets into an assignment. * * * Under this interpretation of the contract, the status of appellant is that of a foreign life insurance company doing business in Arkansas under a "Reinsurance Agreement" with reference to the subject matter, which made it responsible to the State of Arkansas for the occupation tax imposed by said act for the years 1931, 1932, and 1933.' * * *

" '* * * we are, nevertheless, of the opinion that the exemption provisions in favor of fraternal beneficiary societies were intended to inure to the individual members—that is, to certificate holders, as distinguished from the parent agency. On the other hand, the tax statute exempting domestic insurance was intended as a benefit to home corporations. Its purpose was to give encouragement to and thereby promote domestic development. * * *

"We have reached the conclusion that the tax ought not to be assessed for the following reasons:

" (1) Because the State has declared its public policy to be that premiums paid on fraternal beneficiary insurance are not subject to the tax imposed on foreign corporations doing an old line insurance business.

" (2) Because the business which it is now proposed to tax came from a nontaxable source. It was created by an agency which had a right to issue beneficiary certificates, and the premiums on these certificates, could not, under our laws, be reached for taxation purposes while in the hands of appellant's predecessor, The Supreme Lodge Knights of Pythias.

" (3) Because, when Congress authorized The Supreme Lodge Knights of Pythias to separate its business and to organize a division or separate agency charged with the duty of carrying out agreements with certificate-holders, appellant assumed the insurance obligation. That obligation was not impressed with the special tax it is now sought to impose."

The State of Iowa has decided as its public policy that fraternal beneficiary associations are exempt from the premium tax. At the time of the transformation from the fraternal beneficiary association to the old line company the certificates of the fraternal beneficiary association were not taxable. These are the certificates which were assumed by the transformed company. The legislature of Iowa in passing the acts giving the right to transform the company, nowhere provided that there should be a premium tax upon these certificates issued by the fraternal beneficiary association and assumed by the old line company, but it specifically provided that the contracts were to remain the same and were to be assumed by the new company. The legislature might have taxed these certificates if it had so desired, but it did not see fit to do so. The question of whether they should be taxed, or not, is for the legislature. Until it speaks, they are exempt.

It therefore follows that the lower court was right, except wherein the lower court appears to have permanently enjoined the defendants from collecting a tax on said amounts in the future, or from refusing to issue a renewal of license, or from canceling the license because of the nonpayment of such tax in the future. This was not within the issues made by the parties, as the pleadings and evidence pertained only to the amounts collected by the plaintiff during the calendar year of 1935. The decree should be modified as herein indicated, and, as thus modified, it is affirmed.—Affirmed.

Chief Justice and all Justices concur.