LUTHERAN MUTUAL LIFE INSURANCE COMPANY, Appellant, vs. THE STATE, Respondent. [Two cases.]

*March 9—April 13, 1943.*

For the appellant there were briefs by *Crownhart & Murphy* of Madison, attorneys, and *Walter H. Bender, Werner J. Trimborn,* both of Milwaukee, and *F. P. Hagemann* of Waverly, Iowa, of counsel, and oral argument by *Mr. Bender, Mr. Trimborn,* and *Mr. Robert B. L. Murphy.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

MARTIN, J.   The facts are not in dispute.   The appellant was incorporated in 1916 under the laws of Iowa as a fraternal society under the name of Lutheran Mutual Aid Society.   By amendment, effective as of January 1, 1938, it amended its articles of incorporation so as to change its name to Lutheran Mutual Life Insurance Company.   From 1916 to 1937, inclusive, appellant was annually licensed as a foreign fraternal society to transact its business in Wisconsin, during which period it was not required to pay any annual license fee or tax under sec. 76.34, Stats.   During this period appellant issued in Wisconsin a large number of fraternal society certificates, insuring its members; which certificates were in force

and effect on March 31, 1938 (the date of expiration of last annual license as a foreign fraternal society). These certificates continued in force and effect thereafter during the years involved in these actions.

By the amendment, appellant was empowered as a nonstock mutual to write only legal-reserve level-premium life insurance. It was also authorized and required to maintain and carry out according to their terms all fraternal society certificates written before and in effect as of January 1, 1938. It was provided that appellant, under the new name, was "a continuation of the original corporation and shall retain all its [original] rights, powers, privileges, immunities and franchises so far as may be necessary to carry out all its contracts heretofore made with its members." The amended articles also provided that by them the appellant "assumes all obligations and shall have and retain all property, rights, privileges and immunities which it had prior to this amendment and all obtained hereby;" also that the corporate change "shall not affect existing . . . contracts."

After January 1, 1938, appellant did not write any new fraternal society certificates or conduct any form of lodge organization. After the licensed year ending March 31, 1938, no license to transact in Wisconsin the business of a fraternal society was issued to appellant. The license issued after that date was a license authorizing it to transact the business of life insurance in Wisconsin. Before the commissioner of insurance of Wisconsin would issue appellant a license to transact the business of life insurance in Wisconsin for the annual license periods commencing May 1, 1939, and May 1, 1940, respectively, he demanded that appellant pay as a license fee under sec. 76.34, Stats., two per cent of its gross income during the years in question, on both premiums received on life insurance policies and assessments received on fraternal society certificates outstanding on the lives of Wisconsin residents. Appellant admitted obligation to pay license tax

or fee computed upon its receipts of premiums on legal-reserve level-premium life insurance policies issued in Wisconsin since January 1, 1938, but protested against payment on receipts from assessments on outstanding fraternal society certificates during this period. Appellant paid the fees demanded, under protest, and in these actions seeks to recover $2,574.19 for the year 1939, and $3,259.59 for the year 1940.

Sec. 208.01, Stats., defines fraternal benefit societies thus:

"(1) Any corporation, society, order or association, without capital stock, organized and carried on solely for the mutual benefit of its members or their beneficiaries and having a lodge system with ritualistic form of work and representative form of government, and which makes provision for the payment of death or disability benefits or for both is hereby declared to be a 'Mutual Benefit Society,' which shall be held to be synonymous with a 'Fraternal Benefit Society.' Domestic societies licensed to do business in this state as mutual benefit societies on the first day of May, 1911, shall be considered within this subsection.

"(2) Any such society having a supreme governing body and subordinate lodges or branches, into which members shall be elected, initiated and admitted in accordance with its constitution, laws, rules, regulations and prescribed ritualistic ceremonies, which lodges or branches are required by its laws to hold regular meetings, shall be deemed to be operating on the lodge system.

"(3) Any such society shall be deemed to have a representative form of government if it provides a supreme governing body composed of representatives elected by the members or by delegates elected by the members, together with such other members as may be prescribed by its constitution and laws: Provided the elective members shall constitute a majority and have not less than two thirds of the votes nor less than the votes required to amend its constitution and laws; and provided the meeting of the supreme governing body and the election of officers, representatives or delegates shall be held as often as once in four years."

It is conceded by respondent that prior to January 1, 1938, appellant was a fraternal or mutual benefit society as defined by sec. 208.01 (1), Stats. As such it was then exempt from the licensing provisions of sec. 76.34, and annual licenses were issued to it as a mutual benefit society pursuant to sec. 208.24, which, so far as here material, provides:

"(1) No mutual benefit society shall transact any business without a license from the commissioner. Such license and any renewal thereof shall terminate on the first day of the succeeding April, provided that the license shall continue in force and effect until the new license is issued or specifically refused."

Appellant makes no contention that since it became a legal-reserve level-premium mutual nonstock life insurance corporation it has retained any of the characteristics of a fraternal or mutual benefit society. Without the characteristics and formalities provided for a fraternal or mutual benefit society by sec. 208.01 (1), Stats., the appellant as originally organized could not qualify to transact the business of life insurance in Wisconsin under the provisions of ch. 208, Stats., relating to fraternal benefit societies. In *New York Life Ins. Co. v. State,* 192 Wis. 404, 407, 211 N. W. 288, 212 N. W. 801, the court said:

"It is elementary that Wisconsin has the right to determine the conditions under which it will permit foreign insurance companies to do business in this state. The state may refuse to permit them to transact business within its boundaries or it may impose such restrictions or conditions as it sees fit as a prerequisite to permitting them to do business in this state. Among the conditions that may be required is the payment of a license fee. Such license fee may be a fixed and determined amount or it may be based upon a percentage of premiums received, or it may be fixed under retaliatory statutes like those here in question with reference to the fee exacted of Wisconsin corporations by other states."

Sec. 76.34, Stats., provides:

"Every company, corporation or association transacting the business of life insurance within the state, excepting only such fraternal societies as have lodge organizations and insure the lives of their own members, and no others, shall, on or before the first day of March, in each year, pay into the state treasury as an annual license fee for transacting such business the amounts following:

"(1) *Domestic companies.* If such company, corporation or association is organized under the laws of this state, it shall pay as a license fee for the year 1931 and annually thereafter, three and one-half per centum upon its gross income from all sources for the year ending December thirty-first, next prior to said first day of March, excepting therefrom interest required to provide and maintain reserves according to the laws of this state, income from rents of real estate upon which said company, corporation or association has paid the taxes assessed thereon, and excepting also premiums collected on policies of insurance and contracts for annuities.

"(2) *Foreign companies.* If any such company, corporation or association is organized without the state of Wisconsin, it shall pay into the state treasury, as such annual license fee, two per centum upon the excess of the gross premiums received in money or otherwise during the preceding calendar year on all policies or contracts of insurance on the lives of residents of this state after deducting therefrom all sums apportioned to premium paying policies on the lives of residents of this state from annual distribution of profits, savings, earnings or surplus which before the expiration of the calendar year next succeeding such apportionment have been either (1) paid in cash or (2) applied in part payment of premiums.

"(3) *Power granted by license; license fee in lieu of other taxes.* Such license, when granted, shall authorize the company, corporation or association to whom it is issued to transact business until May 1 of the ensuing year, unless sooner revoked or forfeited. The payment of such license fee shall be in lieu of all taxes for any purpose authorized by the laws of this state, except taxes on such real estate as may be owned by such company, corporation or association and

except taxes on personal property of any such company, corporation or association owned by it and used on any farm.

"(4) *Taxes deducted from license fee.* Any life insurance company, foreign or domestic, may deduct from such license fee the amount of taxes paid on personal property owned by it and used on any farm."

Appellant states the questions involved on these appeals as follows: Is the fraternal society assessment income of a foreign life insurance company, derived from certificates issued when it was doing only an exempt fraternal society business, subject to inclusion in the statutory base for computation of the annual tax or license fee under sec. 76.34, Stats., after such company, through reorganization, has become an old-line, level-premium life insurance company, but required to continue in force its fraternal society certificates issued before such reorganization? Appellant contends that if the foregoing question is answered in the affirmative, then to that extent sec. 76.34 is unconstitutional as a denial of equal protection of the laws and due process of law, under the state and federal constitutions.

Since January 1, 1938 (effective date of its reorganization), appellant has been licensed to do business in Wisconsin solely as a legal-reserve level-premium mutual life insurance corporation. The license or permit was granted to the corporation as reorganized. It could not, under its articles as amended, conduct business as a fraternal or mutual benefit society. Sec. 76.34, Stats., fixes the amount of the license fee to be paid.

Appellant argues that the license fee fixed by sec. 76.34, Stats., is on the business transacted rather than on the company transacting it. In support of this contention appellant cites *Travelers' Ins. Co. v. Fricke,* 94 Wis. 258, 68 N. W. 958; *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, 74 N. W. 372, 78 N. W. 407; *State ex rel. Fidelity & Casualty Co. v. Fricke,* 102 Wis. 107, 77 N. W. 732, 78 N. W. 455. True, it is said

in those cases that the tax imposed was a tax on the business and not upon the company. There, however, a single company was transacting both a life insurance business and an accident insurance business. The court held the company was subject to a license tax imposed on each type of insurance business transacted, and was required to obtain separate licenses and pay separate fees. From this appellant argues that since the tax is upon the business, and the business of fraternal life insurance is exempt, therefore the premiums received on fraternal benefit certificates should not be included in the base for the purpose of the determination of the amount of its annual license fee or tax since January 1, 1938. There was no question of exemption involved in the *Travelers' Ins. Co. Cases, supra*. The company was authorized to do a life insurance business and an accident insurance business. In the instant cases appellant is only authorized to do a legal-reserve level-premium mutual life insurance business. As such, under the articles of reorganization, it assumed and agreed to carry out all obligations of the fraternal society certificates issued to its members, which were in force at the time of the reorganization. The annual premiums on the fraternal society certificates are payable to appellant company. They constitute a part of appellant's gross premium income. It cannot be said that appellant is acting merely as a collection agency, receiving the annual premiums from the fraternal society certificate holders, retaining same in a segregated or trust fund to meet the ultimate payments as they accrue to fraternal certificate holders or their beneficiaries.

Appellant further argues that its reorganization did not create a new corporate entity, but merely continued its corporate existence with new and changed powers. However, upon reorganization, it ceased to exist as a fraternal society, discontinued doing business as such, and became a nonstock mutual legal-reserve level-premium life insurance company.

Appellant concedes that the terms "premiums" and "policies or contracts of insurance" are broad enough to include fraternal benefit assessments as "premiums" and benefit certificates as "policies or contracts of insurance;" but appellant argues that the question of whether such terms in a particular statute are inclusive or exclusive of fraternal benefit assessments on the one hand and of benefit certificates on the other is in each case a question of statutory construction.

Sec. 206.01, Stats., provides:

*"Life insurance; definitions.* In any statute relating to life insurance, unless the context indicates otherwise, the following words and phrases shall be understood in the sense herein set forth and defined: . . .

"(3) 'Company,' includes all corporations, associations, partnerships or individuals, engaged as principals in the business of life insurance, except fraternal benefit societies, as defined in section 208.01. . . .

"(11) 'Premium,' is the payment stipulated in the policy to be made by the insured to the company during any one policy year. . . ."

Appellant refers to certain sections of the insurance code of Iowa and to certain articles of incorporation of its reorganization, and quotes from *Yeomen Mut. Life Ins. Co. v. Murphy* (1937), 223 Iowa, 1315, 1319, 1323, 275 N. W. 127, 129, as follows:

"When the legislature passed these sections, giving fraternal beneficiary associations the right to be transformed into an old-line company, it made no provision that it was necessary to have a representative form of government or a lodge system, but specifically provided that nothing in the reorganization would change existing contracts and that the new organization must assume all of the obligations of the old contracts. This means that they should remain as before; that they should continue to be the same kind of a contract as they were before the transformation."

The court further said:

"The state of Iowa has decided as its public policy that fraternal beneficiary associations are exempt from the premium tax. At the time of the transformation from the fraternal beneficiary association to the old-line company the certificates of the fraternal beneficiary association were not taxable. These are the certificates which were assumed by the transformed company. The legislature of Iowa in passing the acts giving the right to transform the company, nowhere provided that there should be a premium tax upon these certificates issued by the fraternal beneficiary association and assumed by the old-line company, but it specifically provided that the contracts were to remain the same and were to be assumed by the new company. *The legislature might have taxed these certificates if it had so desired,* but it did not see fit to do so. The question of whether they should be taxed, or not, is for the legislature. Until it speaks, they are exempt."

We quote from appellant's brief:

"Wisconsin, having licensed the plaintiff unconditionally, must now accept it with all of the endowments given to it by the state of Iowa. For 'a foreign corporation entering a state which chooses to admit it without limitation, express or implied, comes in as it has been created.' "

True, plaintiff was granted an unconditional license to conduct its insurance business in Wisconsin, but subject to the payment of the license fee fixed by sec. 76.34, Stats. That section is clear and unambiguous. It provides but one exception, that is for fraternal societies, *i. e.,* with lodge system, ritualistic ceremonies, and dealing only with members. Appellant does not come within the exception. Wisconsin has the right to determine the conditions under which it will permit foreign insurance companies to do business in this state. It may impose such restrictions or conditions as it sees

fit as a prerequisite to permitting them to do business in this state. *New York Life Ins. Co. v. State, supra.* It exacts a license fee based on gross premiums from the previous year on all policies or contracts of insurance on the lives of residents of this state, after such deductions as are allowable.

Appellant was licensed to transact the business of life insurance in Wisconsin. As a part of its business it took over and assumed liability of the fraternal society certificates. In connection with that business it receives the annual premiums accruing on said certificates. Such premiums are paid into the general fund of appellant company. We see no reason to exclude from the base to which the two per cent license fee applies, under sec. 76.34, Stats., the amount received as annual premiums on the fraternal society certificates. The admitted facts and a proper interpretation of sec. 76.34 admit of no other conclusions.

In holding as we do, we see no violation of the equal protection or due process of law under the state and federal constitutions. There is no taking of property without due process. The constitutionality of basing the license fee upon business done within the state, and measuring the tax upon the premiums on policies of residents of the state, collected in the previous year, was sustained by the United States supreme court in *Equitable Life Assur. Society v. Pennsylvania,* 238 U. S. 143, 35 Sup. Ct. 829, 59 L. Ed. 1239. There is no denial of equal protection; all foreign companies are treated alike. Every company, corporation, or association transacting the business of life insurance within the state, excepting only such fraternal societies as have lodge organizations, and insure the lives of their own members, and none others, shall, on or before the 1st day of March, in each year, pay into the state treasury, as an annual license fee for transacting such business, the amount specified in sub. (2) of sec. 76.34, Stats., hereinbefore quoted.

The point is made that by not following the decision of the Iowa supreme court in *Yeomen Mut. Life Ins. Co. v. Murphy, supra,* we are denying full faith and credit to the judgment of a sister state. This contention cannot be sustained. We are not obliged to give our license and tax statutes the same construction that Iowa gives to its statutes. The Iowa statutes are different from ours.

*By the Court.*—Judgments affirmed.