AMERICAN UNITED LIFE INSURANCE CO.

*v.*

ROBERT A. CRICHTON, STATE INSURANCE COMMISSIONER

(CC 808)

Submitted September 23, 1953. Decided November 10, 1953.

*Jackson, Kelly, Morrison & Moxley, W. T. O'Farrell,* for plaintiff.

*John G. Fox,* Attorney General, *Arden J. Curry,* Assistant Attorney General, for defendant.

BROWNING, JUDGE:

This is a proceeding for a declaratory judgment to determine the taxability of certain assessments collected by plaintiff on fraternal beneficiary certificates issued by the Supreme Lodge Knights of Pythias prior to 1930. The Supreme Lodge Knights of Pythias was organized in 1864 as a voluntary, unincorporated secret society. It was incorporated in 1870, and in 1882, its articles were amended to permit it to conduct a fraternal insurance benefit activity, which it did until the year 1930.

On April 12, 1930, by an Act of Congress, such fraternal societies were permitted to divide and separate their social activities from their insurance activities. Thereafter, on August 18, 1930, this organization availed itself of this privilege, divided its activities, and set up a separate corporation, the United Mutual Life Insurance Company, for the purpose of carrying on the insurance activity. The Supreme Lodge Knights of Pythias continues to operate as a fraternal society and maintains approximately one hundred and twenty subordinate lodges in this State. The United Mutual Life Insurance Company subsequently merged with another corporation, and changed its name to American United Life Insurance Company. The petition recites that the plaintiff is a corporation incorporated under the laws of Indiana and duly licensed and authorized to engage in its business of selling insurance contracts in the State of West Virginia.

No new fraternal certificates have been issued subsequent to August 18, 1930. The certificates issued prior to that time have remained subject to, and are controlled by, the constitution and by-laws of the Supreme Lodge Knights of Pythias. The plaintiff maintains separate

books of account in regard to the assessments, death benefits, etc., and conducts such business on a nonprofit basis, as did the Supreme Lodge.

The bill further recites that, for the years 1931 through 1935, the plaintiff filed an annual report showing the amount of premiums collected upon its ordinary life insurance business, but excluding the amount received from fraternal assessments. Beginning in 1936, the annual report contained the amounts received from both sources, but payment of tax was made only upon the premium income. Such reports and payments were accepted and no demand was made upon it to include the amount of receipts from fraternal benefit certificates in the computation of the tax until the year 1951.

On April 11, 1952, upon the plaintiff's refusal to pay the taxes allegedly due, the Insurance Commissioner, after a hearing, entered an order refusing to issue a Certificate of Authority to the plaintiff for the period April 1, 1952 - April 1, 1953.

An amended petition was filed setting forth that all profits realized from such certificates are applied to the purchase of additional insurance which is in turn allocated to the certificates then in force; that such amount so allocated has amounted to approximately $1,000,000.00 in the past sixteen years; and, also, that the plaintiff now sells its insurance policies to the general public, rather than to the members of Supreme Lodge Knights of Pythias.

The defendant demurred to the petition and amended petition, the Circuit Court sustained the demurrer and on its own motion, certified the following points of law raised thereby:

1. Are the premiums received by plaintiff from such fraternal benefit certificates subject to inclusion in the statutory base for the computation of the annual privilege tax under Code, 33-2-37, Acts of the Legislature, Regular Session, 1945, C.74?

2. Did the Legislature intend that the exemption granted by Code, 33-8-5, should inure to the benefit of the individual holders of fraternal benefit certificates after the insurance activity of the fraternal society has separated and transferred to a non-exempt company?

3. Does the inclusion of such receipts, in the measure of tax imposed, deprive plaintiff of its property without due process of law?

4. Does the failure of state officials in previous years to assess and collect tax upon the premiums received by plaintiff from such certificates amount to an administrative construction of the statutes involved to the effect that the Legislature did not intend the tax to be applicable thereto?

Code, 33-2-37, provides that: "Every insurance company licensed to transact business in this State shall make a return annually, on or before the first day of March, to the insurance commissioner, under the oath of its president or secretary, of the gross amount of premiums collected and received by it during the previous calendar year on business done in this State; and upon receiving from the commissioner a certificate of the acceptance of such return and of the amount of tax due thereon, such company shall pay such tax to the insurance commissioner annually on or before the first day of March. The annual tax which a licensed insurance company is required to pay under the provisions of this section shall be a sum equal to two per cent of the gross premiums received by it on the business written or renewed in this State, including any so-called dividends on participating insurance policies applied in reduction of premiums less premiums returnable for cancellation. * * * "

The West Virginia Constitution, Section 1, Article X, provides that: " * * * property used for educational, literary, scientific, religious or charitable purposes, * * * may by law be exempted from taxation; * * * ." Pur-

suant to that constitutional provision, the Legislature, by Code, 33-8-1, defined a fraternal benefit society as follows: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and a representative form of government and which shall make provision for the payment of benefits in accordance with section 5 (§ 3415) of this article, is hereby declared to be a fraternal benefit society.* * * " Section 4 of Article 8 provides in part as follows: "Except as provided in this article, and except where such societies are expressly designated in other provisions of this chapter, such societies shall be governed by this article, and shall be exempt from all provisions of the insurance laws of this State, * * *." Section 35 of the same article reads as follows: "Every fraternal benefit society organized or licensed under this article is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from all state, county, district and municipal taxes other than taxes on real estate and office equipment."

The plaintiff does not attack the validity of the provisions of Code, 33-2-37, and admits that they are applicable to the business which they have transacted in this State since 1930. Likewise, the defendant does not contend that the fraternal benefit certificates issued by the Supreme Lodge Knights of Pythias were subject to the two per cent tax imposed by that section prior to that date. The issue then resolves itself into the question of whether the non-taxable benefit certificates lost their status as such by the transactions which occurred on and subsequent to August 18, 1930, as heretofore related. This precise question has not been passed upon by this Court, and an examination of the case law in other jurisdictions would indicate that there is a conflict of authority thereon. In *United Mutual Life Insurance Co.* v. *State,* (1937), 194 Ark. 371, 108 S. W. 2d. 484, the

plaintiff in that case being the same company that is involved in this litigation, the court held that where a fraternal benefit society had legally separated its insurance activities from its fraternal functions, and its insurance activities were assumed by a company subsequently reincorporated in another state as an old line legal reserve company, the company was not liable for taxes on premiums collected in Arkansas from holders of certificates issued by the fraternal benefit society. This is the leading case following this line of authority, and an examination of the Arkansas statutes, relating to fraternal benefit societies, shows they are similar to those of West Virginia. In accord with the Arkansas decision are the following cases: *Lockhart* v. *Illinois Bankers Life Assur. Co.*, (1946), 194 S. W. 2d. 611 (Texas) ; *Lockhart* v. *American United Life Ins. Co.*, (1944), 181 S.W. 2d. 607 (Texas) ; *Lockhart* v. *American Mut. Life Ins. Co.*, (1946), 194 S.W. 2d. 285, 290 (Texas) ; *Yeomen Mut. Life Ins. Co.* v. *Murphy*, (1937), 223 Iowa 1315, 275 N.W. 127; *Cochrane, Ins. Comm'r. of Colo.* v. *Bankers Life Co.*, (1929) (C.C.A. - 8th Circuit), 30 F. 2d. 918; *Homesteaders* v. *Murphy*, (1937), 275 N.W. 146 (Iowa).

The other view is expressed in *Lutheran Mut. Life Ins. Co.* v. *State*, (1943), 242 Wis. 598, 9 N.W. 2d. 82, in which the court held, Syl. Pt. 2: "Where a foreign insurance company licensed to transact life insurance business in Wisconsin assumed liability on fraternal society certificates issued prior to company's reorganization as an old line life insurance company, and in connection with that business the company received the annual premiums accruing on such certificates, the amount so received was properly included in the statutory base for computation of the annual tax or license fee." The statutes of Wisconsin and West Virginia are likewise similar, and neither the Wisconsin nor West Virginia statutes provide for the conversion of fraternal benefit societies into old line legal reserve insurance companies, whereas Arkansas does have such a provision in its law. While, of course, we do not have the record before us,

an examination of the opinion in the *Lutheran Mutual Life Ins. Co.* case indicates that the factual situation existing therein differs somewhat from the facts admitted by the defendant's demurrer to the petition as prevailing in this proceeding. For example, we find this statement in the opinion: " * * * The annual premiums on the fraternal society certificates are payable to appellant company. They constitute a part of appellant's gross premium income. It cannot be said that appellant is acting merely as a collection agency, receiving the annual premiums from the fraternal society certificate holders, retaining same in a segregated or trust fund to meet the ultimate payments as they accrue to fraternal certificate holders or their beneficiaries." The plaintiff's petition maintains that the plaintiff is doing exactly the things which the Wisconsin court found that the Lutheran Mutual Life Insurance Company was not doing in that regard.

We find this further statement in the opinion in the *Lutheran Mutual Life Ins. Co.* case: " * * * Such premiums are paid into the general fund of appellant company. * * * " The petition in this case alleges that the plaintiff segregates, by a system of separate accounting, the receipts from fraternal benefit certificates from the income received as premiums from its old line legal reserve insurance business.

It has been very ably urged by counsel for defendant that the insurance tax, provided by Code, 33-2-37, is placed upon an insurance company for the privilege of doing business in this State, and not upon the premiums paid by its policyholders. They maintain, therefore, that the amount of the premiums collected annually by the plaintiff and other insurance companies is only the measure of the tax, and that, therefore, the holders of the fraternal benefit certificates would not be taxed by requiring the plaintiff to pay the two per cent tax, as provided by that section. However, the petition, to which defendant demurred, clearly states that the plain-

tiff administers these certificates in exactly the same manner as the Supreme Lodge Knights of Pythias did prior to 1930, and that it does so without remuneration of any kind beyond necessary administrative charges. The Supreme Lodge Knights of Pythias still retains complete control over these benefit certificates, and if a tax were imposed upon the plaintiff for the amount of the annual assessments, it would be necessary for the lodge to require the certificate holders to pay the tax. It is the opinion of this Court that the fraternal benefit certificates originally were not taxable under the Constitution and statutory provisions heretofore mentioned, particularly Code, 33-8-5; and the fact that such certificates have, since 1930, been administered by a company selling insurance that is taxable, upon the facts in this case, as shown by the petition and the demurrer thereto, has not changed their original status as benefit certificates, and the plaintiff is not required, under the provisions of Code, 33-2-37, to pay the two per cent tax required therein upon the sum received as assessments from the holders of such certificates.

Inasmuch as our answer to the first question certified by the trial court is in the negative, it becomes unnecessary to consider or discuss the other three questions certified.

The judgment of the Circuit Court of Kanawha County, wherein it sustained the demurrer of the defendant to the plaintiff's petition, is reversed, and the case is remanded to that court for further procedure, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*