Herbert, J.
The legal question presented in this case may be stated as follows:
Where a fraternal benefit society, organized under the laws of Kansas and licensed to do business in Ohio as such, amends its articles of incorporation and bylaws in that state so as to transform the society into a mutual life insurance company, changing the name from “The Security Benefit Association” to “Security Benefit Life Insurance Company,” which company secures certificates of authority from the state of Kansas for the purposes of life insurance and accident, health and hospitalization insurance and also secures a license as a mutual life insurance company in Ohio, and where such mutual life insurance company recognizes and continues in force the fraternal benefit certificates previously issued but changes the assessment terms to a “level premium” basis, irrevocably waiving the right to levy additional assessments thereafter, continuing to receive premiums thereon, separating fraternal funds from mutual funds on the books of the company, and investing such fraternal funds and paying claims of fraternal certificate holders separately from the other business of the mutual life insurance company, is such Security Benefit Life Insurance Company exempt from the tax levied under Sections 5729.02 and 5729.03, Bevised Code, computed on a basis to include premium payments received on such fraternal benefit certificates subsequent to such transformation (January 2, 1950) because of the statutory provision contained in Section 3921.39, Bevised Code, that “fraternal benefit societies shall be governed by Sections 3921.01 to 3921.45, inclusive, of the Bevised Code, and shall be exempt from all insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law enacted after June 14, 1911, shall apply to them, unless they are expressly designated therein”?
Fraternal benefit societies are not expressly designated in Sections 5729.02 and 5729.03, Bevised Code.
Section 5729.02, Bevised Code, provides that “ every insurance company incorporated by the authority of another state or government shall set forth in its annual statement to the Superintendent of Insurance the gross amount of premiums *221 received by it from policies covering risks within this state during the preceding calendar year * * *.” (Emphasis added.)
Section 5729.03, Revised Code, provides that the “Superintendent of Insurance * * * shall compute an amount of two and one-half per cent of the balance of such gross amount * * * and charge such amount to such company as a tax upon the business done by it in this state for the period covered by such annual statement.” (Emphasis added.)
Had the plaintiff here not transformed itself, there would, of course, be no controversy in the present case. The question arises whether it still is a fraternal benefit society with respect to the tax sought to be imposed or ceased to be such and became a mutual life insurance company. The position of the plaintiff as set out in its brief is summarized as follows:
The Superintendent of Insurance does not have authority to levy and collect a tax calculated upon the payments made to such transformed company by holders of fraternal benefit certificates issued prior to such transformation, “because (1) R. C. Sections 5729.02 and 5729.03 do not expressly describe such payments as a subject of taxation and, as taxing statutes, should be strictly construed, with ambiguities resolved in favor of the taxpayer; (2) the payments (whether called premiums or assessments or both or something else), which arose from the fraternal insurance contracts (whether referred to as policies or certificates representing such contracts), were the self-same thing as had been declared exempt by statute and, therefore, remain exempt, unless the taxing statutes expressly provide otherwise; and (3) the policy of the Legislature fully corroborated an intention that these fraternal payments should remain exempt.”
The position of the Superintendent of Insurance can be summarized as follows:
(1) Sections 5729.02 and 5729.03, Revised Code, impose a tax on the plaintiff for such payments in that the tax is charged against the company and is in the nature of an excise or franchise tax for the privilege of doing business, being measured by the premium volume; (2) Section 3921.39, Revised Code, does not exempt plaintiff, Security Benefit Life Insurance Company, from the provisions of Sections 5729.02 and 5729.03, *222 Revised Code, for the reasons that, after the transformation of the fraternal benefit society into an insurance company, the attributes of a fraternal benefit society were lost and the fraternal activities abandoned; (3) the Security Benefit Life Insurance Company only is now licensed by the state of Ohio and the Security Benefit Association is no longer licensed by this state as a fraternal benefit society; and, since the exemption from all insurance laws granted by Section 3921.39, Revised Code, to fraternal benefit societies is limited to fraternal benefit societies, the plaintiff as a mutual fife insurance company is not within the provisions of this statutory exemption.
Examination of the record discloses the following facts:
According to testimony of plaintiff’s president, the fraternal benefit society, from its organization in 1892 up to its transformation as of 1950, operated with a normal lodge system and a normal form of representative government. Certificates of membership were issued to all beneficiary members, on which the members made payments of assessments or premiums in accord with the rating of each certificate. Death benefits, certain disability benefits and hospital benefits, together with the normal nonforfeiture benefits of cash surrender and extent of paid-up insurance, were available. The fraternal benefit society also established a hospital, home for the aged and orphans home for the use of its members. The latter two activities were terminated prior to January 1950. Before the transformation, members of the fraternal benefit society paid for life insurance at a level or annual rate in accord with the table based on the age of the applicant, as it appears in the constitution and bylaws of the Security Benefit Association, subject, however, to additional assessments. Also, each member paid 20 cents a month as membership dues. After the transformation, the premium rate remained unchanged although the company was authorized to continue the annual collection charge not to exceed $2.40, but, as provided in the bylaws adopted by the insurance company, “the right and power heretofore existing in the corporation to levy an assessment in addition to the gross premiums payable with respect to each fraternal certificate” was “hereby irrevocably waived.” After the transformation, *223 lodges were no longer operated anywhere and the transformed company no longer had any contractual obligation in regard to hospitalization (except under accident and health policies not involved here), orphans home or home for the aged. Considerable sums were spent in so-called benevolences with regard to the hospital, orphans home and home for the aged programs, but the testimony is not clear to what fund these “benevolences” were charged.
A report of examination of the Security Benefit Life Insurance Company as of December 31, 1952, by the insurance representatives of Virginia, Missouri and Kansas, covering the period from December 31, 1947, through December 31, 1952, shows that the board of directors of the plaintiff, at a meeting held January 18, 1950, adopted a method of allocating expenses between the funds of the reorganized company. That report shows that under that expense allocation formula the fraternal fund was charged $57,795.92 for the month of December 1952. The report also shows transfers from the fraternal fund to the hospital corporation, totalling $875,000 for the years 1950, 1951 and 1952.
After January 2, 1950, no new contracts of fraternal insurance were written but opportunity was given to all holders of fraternal certificates to convert their policies into mutual policies. As to the responsibility of the company to those who did not convert to mutual policies, the record is somewhat confused, but the plaintiff finally admitted — in fact insisted— that it, as a transformed company, is obligated to pay the certificate death benefit claims whenever they occur. With that conclusion we agree. There also seems to be a great cloud of doubt in the record as to what will become of the money, if any, that is left over in the fraternal fund after final payment of contractual obligations on all certificates;
Plaintiff’s president testified:
“The surplus, the unnecessary surplus, if you might use that word is distributed to the fraternal holders in the form of dividends each year.”
He testified also that the present holders of fraternal *224 policies are voting members of the mutual company so that both new mutual life insurance policy holders and holders of fraternal certificates have equal voting rights for the election of members of the board of directors.
As to the segregation of fraternal and mutual funds as of January 2, 1950, the examination report contains the following paragraph:
“After the proposed plan of reorganization had been adopted, but prior to the effective date thereof, the board of directors, at a meeting held October 5, 1949, approved the transfer of $500,000 from surplus in the adult benefit fund to the general (expense) fund. Upon the effective date of reorganization, January 2, 1950, the general fund became the company or mutual fund and the other funds of the society were combined into one, the fraternal fund.”
The entire membership of the national council of the plaintiff as a fraternal benefit society having voted during July and August of 1949 for the reorganization or transformation and the board of directors having approved the transfer of $500,000, as of October 5, 1949, it would appear from the record, therefore, that the only asset which the mutual fund had as of January 2, 1950, was this half million dollars. The same examination report shows that the amount of life insurance in force as of December 31, 1952, was $101,295,574 as to fraternal insurance and $30,271,858 as to mutual, of which the Ohio allocations were $2,219,623 for fraternal and $521,108 for mutual.
With this summary of facts, we return to the problem which admittedly is one of first impression here in Ohio. Plaintiff contends that the decision of the Court of Appeals in this case is in conflict with the great weight of authority in the United States, in that the same issue has been presented in a number of different states, and that in every state, with the exception of Wisconsin, the decisions support the plaintiff’s contentions here. Cases from Iowa, Illinois, Arkansas, Missouri, Texas and West Virginia are cited to support this position.
Two cases cited from Arkansas are Modern Woodmen of America v. State, ex rel. Attorney General (1937), 193 Ark., 458, 103 S. W. (2d), 38, and United Mutual Life Ins. Co. of *225 Indianapolis v. State, ex rel. Attorney General (1937), 194 Ark., 371, 108 S. W. (2d), 484.
In the first of those cases the state sought to impose its tax on the society because it was issuing a full line of insurance policies in addition to its fraternal benefit certificates. The court held that Modern Woodmen of America was a fraternal benefit society and exempt from the operation of general insurance laws. There was no question in that case about a transformation into a mutual life insurance company.
In the second ease, the Supreme Lodge Knights of Pythias had separated its insurance activities and organized the United Mutual Life Insurance Company to handle the insurance, which company was later reincorporated under the laws of Indiana, one of which provided:
“Such new corporation shall be clothed with all of the rights, powers, duties, responsibilities and liabilities of such old corporation, or the predecessor corporations issuing such fraternal certificates, and the same shall be and remain fraternal certificates, and shall be governed by all of the laws regulating fraternal, insurance # * *.”
It may be noted that “fraternal certificates” are specifically referred to therein.
Two cases from Iowa are cited: Yeoman Mutual Life Ins. Co. v. Murphy, Commr. of Ins. (1937), 223 Iowa, 1315, 275 N. W., 127, and State, ex rel. Pew, Commr. of Ins., v. Independent Order of Foresters (1939), 226 Iowa, 1339, 286 N. W., 425. The Iowa statutes authorized a transformation from a fraternal benefit society into a level premium mutual life insurance company, and the Supreme Court of Iowa held that those statutes evidenced a public policy of exemption of fraternal benefit certificates from the computation of annual franchise taxes.
In Missouri, “assessment” insurance companies were exempt by statute from the tax levied on the basis of premiums received. See Northwestern Masonic Aid Assn. v. Waddill, Supt. of Ins. (1897), 138 Mo., 628, 40 S. W., 648. In the case of Young v. Hartford Life Ins. Co., 277 Mo., 694, 211 S. W., 1, the suit was between beneficiaries of a policy of a fraternal benefit insurance society and the company which was seeking to void *226 the policy for nonpayment of an assessment bottomed on a state tax. There, the court relied on the previous' case of Northwestern Masonic Aid Assn. v. Waddill, supra, and upheld the position of the policy beneficiaries.
Texas cases cited are Lockhart v. American United Life Ins. Co. (Tex. Civ. App., 1944), 181 S. W. (2d), 607, and Lockhart v. American Mutual Life Ins. Co. (Tex. Civ. App., 1946), 194 S. W. (2d), 285.
Much reliance is placed by the plaintiff here on the decision of the Supreme Court of Illinois in the case of Security Benefit Life Ins. Co. v. McCarthy, Dir. of Insurance, 4 Ill. (2d), 194, 122 N. E. (2d), 549, which case involved the plaintiff here. There, the Supreme Court of Illinois held that Security Benefit Life Insurance Company was not required to pay the privilege tax for doing business in Illinois calculated upon amounts collected from Illinois holders of fraternal benefit certificates issued prior to transformation. In the opinion by Klingbiel, J., it is stated:
“The public policy of the state of Illinois has been to exempt the fraternal benefit business from taxation. Since its transformation, plaintiff has operated in a dual capacity, maintaining two separate funds. If a tax were imposed on receipts from fraternal certificate holders, the burden of such tax would necessarily fall on the fraternal fund, contrary to the aforesaid policy of this state. * * * Fraternal benefit certificates which were not taxable prior to January 2, 1950, have not become taxable merely because they are now being administered by a company which also deals in insurance which is subject to tax.
“In Lockhart v. American United Life Ins. Co., — Texas, —, 181 S. W. (2d), 607 (1944), at page 611, the court said: ‘This construction accords with the uniform policy of the state; and places these certificate holders upon the same basis as certificate holders in other fraternal benefit societies. And since the tax of necessity ultimately falls on the certificate holders, it obviates a discrimination between these and those holding certificates in other fraternal benefit societies — a discrimination manifestly opposed to any legislative intent.’ ”
It is apparent from the above-quoted portion of the Illinois *227 opinion that the court there relied strongly on the fact that the plaintiff maintained two separate funds and also on the assumption that the tax imposed would fall directly on the fraternal certificate holders.
In the case of Lutheran Mutual Life Ins. Co. v. State (1943), 242 Wis., 598, 9 N. W. (2d), 82, a similar situation was presented. In that case the Lutheran Mutual Aid Society, operating under the laws of Iowa as a fraternal society, amended its articles of incorporation so as to become the Lutheran Mutual Life Insurance Company. The transformation was effective on March 31, 1938, and thereafter the company omitted from its tax computation premiums received on fraternal society certificates issued prior to the transfoi’mation. The court noted that “appellant makes no contention that since it became a legal reserve level-premium mutual nonstock life insurance corporation it has retained any of the characteristics of a fraternal or mutual benefit society. Without the characteristics and formalities provided for a fraternal or mutual benefit society by Sec. 208.01 (1), Stats., the appellant as originally organized could not qualify to transact the business of life insurance in Wisconsin under the provisions of Ch. 208, Stats., relating to fraternal benefit societies. ’ ’
Plaintiff here points out that in the Wisconsin case the premiums on the fraternal society certificates were paid into the general fund of the company, there being no apparent segregation of “mutual” and “fraternal” funds.
The divergent views of those cited cases are discussed in the case of American United Life Ins. Co. v. Crichton, Ins. Commr., 138 W. Va., 877, 78 S. E. (2d), 226. In the opinion in that case, it is stated:
“However, the petition, to which defendant demurred, clearly states that the plaintiff administers these certificates in exactly the same manner as the Supreme Lodge Knights of Pythias did prior to 1930, and that it does so without remuneration of any kind beyond necessary administrative charges. The Supreme Lodge Knights of Pythias still retains complete control over these benefit certificates, and if a tax were imposed upon the plaintiff for the amount of the annual assessments, it *228 would be necessary for the lodge to require the certificate holders to pay the tax. It is the opinion of this court that the fraternal benefit certificates originally were not taxable under the Constitution and statutory provisions heretofore mentioned, * * * and the fact that such certificates have, since 1930, been administered by a company selling insurance that is taxable * * * has not changed their original status as benefit certificates * # * J ?
The underlying theme of the foregoing-cited cases, with the exception of the Wisconsin case, seems to be the assumption that the tax will fall directly upon the fraternal benefit certificate holders, an assumption to which we do not subscribe in the instant case.
Turning to the statutes in Ohio, the tax levied under Section 5729.03, Revised Code, is a tax on the company for doing business in Ohio, measured by its gross premiums, and not upon either the fraternal benefit certificate holders or the policy holders now currently being insured by the company under its status as a mutual life insurance company. Admittedly, the company has neither paid nor sought to pay the renewal license fee provided in Section 3921.33, Revised Code, for a fraternal benefit society (nominal as it may be), and obviously it could not because it ceased to be a fraternal benefit society on January 2, 1950. It has undertaken to qualify and has qualified to be licensed as a mutual life insurance company from that date on. It also has continued to charge certificate holders with whom contracts were made prior to 1950 premiums at rates previously fixed plus the annual service charge of $2.40 and has waived the right of additional assessments in the future. In other words, each certificate holder as of January 2, 1950, had a new contract of life insurance with terms of premium payments permanently fixed.
The fact that the plaintiff has since paid dividends to these certificate holders from so-called unnecessary surplus indicates that the waiver of the right of additional assessments has not affected the financial position of the company. Also, the fact, as it appears in the record, that there seems to be no present determination as to what will become of the beneficiary or fra *229 ternal fund after the last certificate has been paid, points more strongly to the conclusion that the plaintiff is doing business in Ohio as a mutual life insurance company only. Avoidance of the tax sought here would in no event inure to the benefit of the Ohio holders of certificates issued prior to January 1950, except by way of noncontractual dividend payments from the “unnecessary surplus,” and, if the tax is imposed on the plaintiff, it will in no way affect the financial liability of the certificate holders as to their premium payments. In other words, their burden will be neither lightened nor made heavier regardless of whether the tax is imposed or not.
From this examination of our statutes, it appears clear to the court that a fraternal benefit society is any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries and not for profit, and having a lodge system with ritualistic form of work (as defined in Section 3921.01, Revised Code) and representative form of government (as defined in Section 3921.03, Revised Code) and which makes provision for the payment of benefits (as provided in Section 3921.09, Revised Code, requiring death benefits and permitting other optional forms of benefits).
Our examination shows further that at the present time Ohio has no statute providing for transformation of a fraternal benefit society into a mutual life insurance company. It is noted, however, that at the last session of the General Assembly a new Chapter 3921 was enacted which contains a new Section 3921.09 specifically providing for such conversion or transformation, but the new act will not be effective until January 1, 1961. Present Section 3921.09 (see paragraph one of syllabus) is repealed effective the same date and will be replaced by new Section 3921.14. The provisions of present Section 3921.39 are carried over into new Section 3921.41 when the act becomes effective. It is of interest to note also that a mutual protective association organized under Section 3919.01, Revised Code, may be transformed, under the provisions of Section 3919.13, Revised Code, into a mutual life insurance company, in which event “such company or association, upon procuring from the *230 superintendent a certificate of authority to transact business on the legal reserve or level premium plan, shall incur the obligations and enjoy the benefits thereof as provided by the laws of this state, as though it had thus been originally incorporated. ’ ’
Returning to plaintiff’s contention that Sections 5729.02 and 5729.03, Revised Code, do not expressly describe fraternal benefit payments as a subject of taxation and that taxing statutes should be strictly construed with ambiguities resolved in favor of the taxpayer, we fail to see where there is any ambiguity in these sections. Nor can we accept plaintiff’s position that these payments were the self-same thing as had been declared exempt by statute. Section 3921.39, Revised Code, provides that fraternal benefit societies, not fraternal benefit certificates, shall be exempt from all insurance laws of this state. It is true that the original purpose of our fraternal benefit society act was to lighten the load for certificate holders, but the words of our exemption statute relate only to fraternal benefit societies. The plaintiff can no longer claim to be such, since by unanimous action of its own governing body it changed its own status.
As to the policy of the Legislature, we think it is clear. Fraternal benefit societies are exempt from all insurance laws of this state, but mutual life insurance companies are not. We cannot escape the conclusion that the plaintiff here, originally organized as a fraternal benefit society under the laws of Kansas and licensed to do business, as such here in Ohio, after amending its articles of incorporation and bylaws so as to be transformed into a mutual life insurance company and being thereupon duly licensed to do business in Ohio as a mutual life insurance company only, having ceased to operate lodges and issuing no new contracts of fraternal insurance but changing the terms of outstanding fraternal benefit certificates from an assessment basis to a “level premium” basis in a sum designated prior to the transformation plus an annual collection charge in the same amount as previously charged as dues, and having waived any right of increased assessments in 'the future, ceased to be a fraternal benefit society as of the effective date *231 of its transformation and became thereafter a mutual life insurance company.
It follows, accordingly, that the company is no longer subject to the provisions of Chapter 3921 of the Revised Code, and that Section 3921.39, Revised Code, providing that “fraternal benefit societies * * * shall be exempt from all insurance laws of this state, not only in governmental relations with the state but for every other purpose,” is not applicable to this company.
Plaintiff finally contends that the judgment of the Court of Appeals violates its constitutional rights with respect to (a) full faith and credit, (b) equal protection and (c) retroactive impairment of obligation of contract.
As to the first two contentions, we take the same position as did the Supreme Court of Wisconsin in the Lutheran Mutual Life case, supra. The opinion in that case states:
“In holding as we do, we see no violation of the equal protection or due process of law under the state and federal Constitutions. There is no taking of property without due process. The constitutionality of basing the license fee upon business done within the state, and measuring the tax upon the premiums on policies of residents of the state, collected in the previous year, was sustained by the United States Supreme Court in Equitable Life Assur. Society v. Pennsylvania, 238 U. S., 143, 35 S. Ct., 829, 59 L. Ed., 1239. There is no denial of equal protection ; all foreign companies are treated alike. * * *
“The point is made that by not following the decision of the Iowa Supreme Court in Yeoman Mut. Life Ins. Co. v. Murphy, supra, we are denying full faith and credit to the judgment of a sister state. This contention cannot be sustained. We are not obliged to give our license and tax statutes the same construction that Iowa gives to its statutes. The Iowa statutes are different from ours.”
In this case, of course, the plaintiff is dealing with Kansas statutes which are not identical with ours.
As to the third contention, plaintiff makes the same mistake which runs throughout its brief, namely, that somehow and in some way the certificate holders’ rights have been impaired. Under our statutes, the certificate holder in a foreign *232 fraternal benefit society bas the indirect protection that his society cannot be taxed for its right to do business in Ohio based on the volume of his assessments or premiums, and so long as it continues to be a fraternal benefit society he is secure in that protection. In the instant case, that situation terminated when the Security Benefit Association voluntarily transformed itself into a mutual life insurance company and a substantially different contract was continued between the newly transformed company and the certificate holder whereby their relationships became fixed and not variable with respect to assessments. We can see no constitutional violations here.
We hold, therefore, that in computing the annual franchise tax required under the provisions of Sections 5729.02 and 5729.03, Revised Code, both the premium income on fraternal benefit certificates and the premium income from mutual life insurance business must be included in the gross amount of premiums received by this company from policies covering risks in this state during the preceding calendar year.
Judgment affirmed.
Weygandt, C. J., Zimmerman, Taet, Matthias, Bell and Peck. JJ.. concur.